THOMAS J. SMITH ET AL. V. FINLEY SMITH.

FILED MAY 8, 1902.  No. 11,441.

1. **Conditions Subsequent.** Ordinarily, where a devise of real property is couched in such language as to show an intention to vest title in the devisee immediately upon the will becoming operative, and attached to the devise are certain conditions, the compliance with and performance of which may accompany or follow the vesting of the title in the devisee, such conditions will be construed as conditions subsequent.

2. ——. Conditions set out in the opinion in the present case. *held* to be conditions subsequent.

3. ———: REASONABLE: BAPTISMAL NAME. Conditions in a will that the devisee should be christened and baptized by a certain name, and none other name, and that he shall maintain and be known by that name during his natural life, are reasonable, such as a testator may lawfully impose, and enforceable.

4. **Construction of Will.** The provisions and conditions of a will, like those of other contracts, are to be construed by the courts with the view of carrying out the intentions of the testator.

5. **Will:** COMPLIANCE WITH CONDITIONS. The deceased, Thomas Smith, by his last will devised his real estate to a son near two years old, by the name of Finley Smith, by his second wife. The son had, before the execution of the will, been given the name Bertrand Smith. Attached to the devise were the conditions that the said son should be baptized and christened Finley Smith, and none other name but Finley Smith, and that he should maintain and be known by that name during his natural life, and, if such conditions were not performed and complied with, the real estate devised should revert to the testator's other children (naming them), and their legal heirs. The evidence discloses that, while formal compliance had been had of the condition of the will as to the devisee being baptized and christened by the name Finley Smith, that he had never maintained or been known by that name prior to the time he arrived at twenty-one years of age, when a contest arose as to his rights to the property under the said provisions of the will. *Held*, That by reason of such non-compliance, and the failure to perform the condition imposed by the terms of the will, the title of the devisee to the property devised thereby ceased and terminated, and that such property reverted to the other children of the testator, and their heirs, according to the alternative provisions of the will.

ERROR from the district court for Otoe county. Tried below before RAMSEY, J. *Reversed.*

*Stephen B. Pound* and *Roscoe Pound,* for plaintiffs in error.

*W. F. Moran* and *W. C. Sloan, contra.*

HOLCOMB, J.

One Thomas Smith, deceased, by his last will devised his real estate, some 240 acres, situated in Otoe county, and being all the land he owned, to his infant son, by the name of Finley Smith. The devisee named was the issue

of a second marriage by the testator. To the devise were attached certain conditions, upon the failure to comply with or perform which, the title of the devisee, Finley Smith, in and to the lands devised, was to cease and terminate, and the property devolve on the children of the testator by his first wife, and their heirs. The will further provided that the executors therein nominated were to have charge of the said real estate until the son, Finley Smith, should arrive at his majority, when the same, with the accrued rents and profits, was to be turned over to him; he then and thereafter to have full control and unrestricted possession of all of said property. When Finley Smith arrived at the age of twenty-one, the executors made their final report to the probate court; and prior to any order directing the delivery of the possession of the property in the hands and under the control of the executors to the devisee, Finley Smith, the other heirs mentioned in the will filed formal protest and objection to any order of distribution of the estate in favor of the said Finley Smith, on the ground and for the reason that the conditions mentioned in the will, which by its terms were to be performed and complied with by the devisee first named, had not been complied with nor fulfilled, and because thereof his title to the property had been forfeited, and the objectors thereupon became invested with the title to the property, under the alternative provision of the will. From a finding and order in the probate court adverse to the devisee, Finley Smith, he appealed to the district court. After issues were formed and a trial had in the latter tribunal, the order of the probate court was vacated and set aside, and a decree entered in favor of the devisee, Finley Smith. Those to whom the land was devised over on a failure to comply with the conditions imposed on the devisee, Finley Smith, prosecute error proceedings in this court for the purpose of obtaining a review and reversal of the findings and decree of the district court.

The provisions referred to in the will of the testator,

Thomas Smith, deceased, which give rise to the present controversy, and have resulted in the litigation we are asked to review, are as follows:

"I hereby devise and bequeath to my son, Finley Smith, by my second wife, Sarah, all of my lands and real estate lying and situate in Hendricks precinct, Otoe county, Nebraska. This devise and bequest is made on the following terms and conditions. That my son Finley shall have for his support the entire net proceeds from said lands and real estate until he reaches the age of twelve years. My executors to have full charge and control of all of said real estate and lands. To rent the same, pay all taxes and necessary repairs to prevent waste and pay the balance to the guardian of my son Finley for his said support. After he shall have reached the age of twelve years then the net income from the said farm as aforesaid shall be placed at interest both principal and accruing interest, until my son Finley shall have reached the age of twenty-one years, when the whole amount shall be paid him by my executors. My son Finley shall have no further use of said moneys out of said lands except as aforesaid, nor the occupancy of said lands until he has reached the full age of twenty-one years then he is to come into the full possession of the same and to have and hold all the right, title and interest I am now possessed of in said lands and real estate.

"The conditions of the above devise and bequest to my son Finley are these: That my son Finley shall be baptized and christened Finley Smith and none other name but Finley Smith, and that he shall maintain and be known by that name, during his natural life. If otherwise that is.to say, if he is not christened Finley Smith and does not maintain that name, then this devise and bequest to my son Finley Smith shall be of no effect whatever and void, and my real estate and lands shall be divided equally among my three sons, William, John R., and Thomas, or their legal heirs. And I make a further condition to my bequest and devise to my son Finley. That should my

son Finley die before he marries and has issue then in that case, the said lands shall revert to my three sons William, John R. and Thomas, and be divided equally among them as before mentioned."

While some collateral questions are presented in briefs of counsel of respective parties, in our view of the record now before us the main and important question to be determined is whether, as a matter of fact, there has been such a compliance with the terms and conditions of the will with respect of the devise to Finley Smith as to entitle him to the property of the deceased testator, or whether the property should be held to revert to the other devisees mentioned, under the terms of the will, because of noncompliance with such conditions. It seems reasonably clear, as we read the entire instrument, that the conditions heretofore set forth to be performed and complied with on behalf of, and on the part of the said Finley Smith were to follow and be complied with after the vesting of the estate in the person mentioned, and are therefore conditions subsequent; that is, by the terms of the will the property was devised to the son Finley Smith on the death of the testator; the title to remain in him, and the property to be held and possessed by him, only on condition that he should be baptized and christened Finley Smith, and none other name but Finley Smith, and that he should maintain and be known by that name throughout his natural life, and that in the event of either of the conditions named, or both of them, not being complied with, the property should revert to the testator's other sons therein named, and their legal heirs. Such construction, we think, carries out the intention expressed by the testator, and gives force and effect to all the different provisions of the instrument. The title to the property did not vest in the executors, the other devisees mentioned, except on breach of the conditions named in the will, nor in the heirs at law. Consequently we think the title must be held to have vested on the death of the testator conditionally in the son Finley Smith, to be divested on failure to comply with the

conditions by which it was provided he should hold his title. This construction we regard as the only reasonable one to be given, and in harmony with the authorities generally on the subject. Tiedeman, Real Property, sec. 273; *Finlay v. King's Lessee*, 3 Pet. [U. S.], 345; *Taylor v. Mason*, 9 Wheat. [U. S.], 325; *Petro v. Cassiday*, 13 Ind., 289; *Bell County v. Alexander*, 22 Tex., 350; 2 Jarman, Wills (Notes by Randolph & Talcott), p. 509, and note 3. The property was the testator's in his lifetime. It was his to make such disposition of as accorded with his own views and judgment, and in its devolution he could impose such conditions as to him seemed proper, which were not in themselves unreasonable in character, or contravened by some recognized rule of public policy or positive law. That the conditions imposed are reasonable, and such as he was authorized to prescribe, is not questioned, and can not, we think, be challenged on any tenable grounds. 1 Underhill, Wills, sec. 516; 2 Jarman, Wills (Randolph & Talcott ed.), p. 579; *Taylor v. Mason, supra; Webster v. Cooper*, 14 How. [U. S.], 488, 500; *Merrill v. Wisconsin Female College*, 74 Wis., 415, 43 N. W. Rep., 104. In such a case it is the duty of the court to construe such provisions in a will, like all other contracts, with a view of carrying out the intention of the testator. *St. James Orphan Asylum v. Shelby*, 60 Nebr., 796, 811.

With these preliminary observations we proceed to a discussion of the record relative to the question of whether the conditions subsequent to which we have alluded have been performed and complied with, so as to preserve to the defendant in error title to the property devolving on him by the terms of the instrument under consideration. The district court found there had been a substantial compliance with such conditions, and, in reviewing the case, we are required to determine whether such finding is reconcilable with any reasonable view which may be taken of the evidence submitted in the cause. As introductory to what follows, we should perhaps here state that it is disclosed by the record that the mother of the son Finley

Smith and the deceased had been married but a short time prior to his death; the son at the time of his father's death being under two years of age. The son, it seems, had been named after his birth, and before the execution of the will, Bertrand Smith. It appears that the deceased and his second wife failed to live together peaceably and harmoniously; that she had applied for a divorce, was living apart from him during his last sickness, and was not at his bedside at his death. A short time prior to his death, and apparently in contemplation of his early demise, the husband and wife, in a discussion of their domestic affairs, agreed that the child's name should be changed from Bertrand to Finley, and that he should become a beneficiary of the father's estate by will thereafter to be executed. The reason therefor will appear later on. No provisions were made in the will for the wife, nor was she mentioned as a beneficiary; and, save her dower interest, she was given nothing of the estate of the deceased. After the incident just mentioned, the will in controversy was executed, with the conditions included therein which we have noted. The testimony of the mother is that the child, about ten months after the decease of the testator, was christened Finley Smith, and that he maintained that name until he was twenty-one years old, when the present litigation had its origin. The son testified to substantially the same state of facts as the mother, except that his recollection did not extend back to the acts of christening, or regarding matters transpiring before he became six or seven years of age.

Regarding the statement that the son had maintained the name Finley Smith since the alleged christening, we can regard it only in the nature of a conclusion, rather than a statement of fact, and unquestionably contradicted by every transaction and fact shown in evidence during the entire period covered by the testimony. It is manifest that the father desired his son to be named and known as Finley Smith, and none other name, in order to conform to a family custom existing for many years of its past

history, and also to perpetuate that particular name, in honor of a brother bearing the same name. The name appears to have been one maintained in the family for generations. It was these considerations, and to accomplish the object mentioned, which caused the testator to devise to the child of his second wife all his real estate, to the exclusion of his other children. As we view the record, it is obvious that the one purpose and object which actuated the testator respecting the matter, and induced him to make disposition of the property as he did to the son first mentioned, and to make his title thereto depend on the conditions so forcibly and clearly expressed in his will, was solely to perpetuate the name Finley in the family, as had been the custom for generations past and gone. Have those conditions been fairly met and complied with? The actual facts, as disclosed by the record,—and they are not controverted save by the very general answers of the mother and son to which we have made mention,—are substantially as follows: The will was executed October 27, 1879, and the testator died November 14th, following. The child called Finley Smith in the will was at the time of the death of his father under two years of age, and prior to that time had been given the christian name Bertrand. It appears that after the death of the testator, and the probate of his will, the mother, in September, 1880, had the child baptized by the name of Finley Smith; the ceremony being performed privately by a minister of the Seward Mission of the Methodist Protestant Church at Utica, in Seward county, in the room of a private dwelling-house where the mother was then staying; there being no witness to the ceremony, save the lady with whom the mother was staying. The certificate introduced in evidence simply recites "that Finley Smith was baptized by the undersigned, an ordained minister of the M. P. Church, pastor of the Seward Mission Nebraska Conference, given this first day of September, 1880. C. E. Phinney, Pastor. Witness, Mrs. S. E. Babcock." It is insisted that this act of christening and baptism was not in good faith, with a view

of carrying into effect the intention of the testator, and there appears much merit in the contention. The mother soon returned to Bennett, Nebraska, where she had formerly resided, and the child continued to be known as Bert or Bertie Smith,—a contraction of the name first given,—and was so called by the members of his own family, consisting of the mother and two older half-brothers. When he was old enough to go to school, his name was given to the census enumerators and enrolled in the school registers as Bertie Smith, and he was so known among his schoolmates and playmates generally. The evidence is conclusive that his name was never in fact changed, and it was not known among those with whom he associated that his name was other than Bert, Bertie or Bertrand Smith. It is true the mother testifies that she did not call him by these names, but she called him "babe" or "son"; and it is equally true that she knew all the time that the name by which he was known generally, and that which was used in the family in her presence and hearing. and apparently with her consent and approval, if not actual procurement, was contrary to the wishes and intention of the testator, and in violation of the expressed provisions of the will. When he was seven or eight years old the family removed to Lincoln, where, so far as the evidence discloses, the name of Bertrand, or one of its contractions, was still maintained as his Christian name, and by which he was known to those with whom he associated. After residing in Lincoln some two years, the family removed to California, where it remained until about the time the son arrived at the age of twenty-one, when they returned to Bennett, Otoe county, where they resided, except for a short time when in the state of Iowa, until the commencement of the present litigation. During all this period of time the son maintained the name of Bertrand, first given him, with the possible exception of rare occurrences. when his name would be signed with the initial letter F., as standing for a middle given name. At no time and no place does it appear from the evidence that he main-

tained the name Finley Smith, used that name as his right-
ful one, or was ever addressed by such name by those with
whom he associated or did business. When he returned
to the neighborhood where he had lived as a child, he was
there again called and known by his early name of Bert
and Bertie, and gave full recognition to that name as
being his right one,—made no objection, correction or pro-
test when so addressed. He managed and conducted his
business affairs, received mail, signed papers, and in other
ways held himself out to all the world by and under the
name of Bertrand, Bert, and Bert F. Smith. All this the
son himself practically admits in his testimony while on
the witness stand. Notwithstanding his compliance with
the provisions of the will was vigorously challenged by the
other children, and a trial had regarding the matter, he
could not, nor could his mother, who must in some degree
be held responsible for the condition of affairs, and who
testified in his behalf, produce the slightest documentary
evidence, save the certificate of baptism mentioned,—no
signature, no correspondence, no written memoranda, and
no writing of any kind during the twenty-one years of his
life, voluntarily entered into or made by either him or
his mother, who was his natural and legal guardian,—as
proof that he had in good faith been given, taken, adopted
and maintained as his true name, Finley Smith, in con-
formity with the expressed desire and intention of his
deceased father, the testator. If further proof is lacking
of a manifest failure to comply with the conditions of the
will, it is found in the fact that after the litigation had
begun, and when he was called upon to show that he had
maintained the name Finley Smith, according to the pro-
visions of the will and intentions of the testator, he was
unable to correctly spell the name Finley until he had
been instructed after incorrectly spelling the name in sign-
ing the paper first filed in the case in his behalf.

It is urged in excuse for the action of the devisee that
he can not be held accountable for any act or omission to
act until he arrived at the age of his majority. But this,

clearly, was not the intention of the testator, as expressed in his will, and it was for him to prescribe and define the terms and conditions upon which his property should descend on the devisee first named; and the conditions he imposed, it would seem, should be complied with, whether accomplished by the son's acts, on his own volition and judgment, or by another acting for and on his behalf. *Johnson v. Warren*, 74 Mich., 491; *Merrill v. Wisconsin Female College*, 74 Wis., 415; *Stover's Appeal*, 77 Pa. St., 282.   Clearly, from the wording of the instrument, it was the intention of the testator that the devisee should be baptized and christened Finley Smith within a reasonable time after his death and the probate of his will, and that he should maintain that name, and none other, as therein expressed during his natural life; that is, from the time of the christening and baptism, for the remainder of his life, he should maintain the name Finley Smith, given him by the contemplated christening. It was not the intention of the testator that he should be christened by the name Finley, and then, at some future and indefinite period, assume, be known, and maintain that name, but that the act of christening was to be followed continuously by all acts necessary and required to maintain the name thus bestowed on him, and that compliance with such condition should be had within a reasonable time after the will became operative, and be continuous thenceforward during the period of his natural life.   *Drew v. Wakefield*, 54 Me., 291; *Carter v. Carter*, 14 Pick. [Mass.], 424; *Ross v. Tremain*, 2 Met. [Mass.], 495; *Tilden v. Tilden*, 13 Gray [Mass.], 103, 109; *Ward v. Patterson*, 46 Pa. St., 372; Schouler, Wills, sec. 600.

It is obvious that the testator was jealous lest that particular name, and none other, should not be borne by his offspring and devisee; and, desirous of the name being maintained, uncorrupted with any other, so expressed himself in unmistakable terms.   It was not incumbent on the devisee or his guardian to accept the conditions.   Whether to comply with the terms of the will or not was a matter

regarding which there was freedom of action; but the devisee can not, without disregarding the provisions of the will, and doing violence to the intention of the testator, be allowed to accept the benefits conferred without complying, in truth and substance, with the conditions imposed. But viewing the matter entirely in the light of the acts and conduct of the devisee, leaving out of consideration altogether what transpired before he arrived at the age of understanding and accountability, no different conclusion can be reached. He testifies that when he was nine, ten, or eleven years of age he was informed by his mother of the conditions of the will; and it is apparent she knew well and fully its provisions from the time of its probate, December 31, 1879. He also testifies that he knew of his right name under the terms of the will when he was seventeen or eighteen years old. And yet it is as conclusively shown that at no time thereafter, until after the litigation began, did he attempt to maintain the name Finley Smith, or recognize in any way that name alone as being his true name. While there was no formal notice given either him or his guardian by the executors of the conditions named in the will, it is too obvious for discussion or doubt that they were fully cognizant of them from the time he arrived at the years of understanding, and his guardian from the time of the probate of the will. The conclusion is irresistible that the testator's intentions and his expressed conditions have been disregarded, with reference to his property passing to the devisee first named, and, because of the non-compliance with such conditions, it was his intention and direction that the property should pass to the other children named in the will, and their legal heirs; and it is the duty of the courts to give force and effect to his intentions as thus expressed. The instrument was of his making, and to properly construe its provisions and enforce them, not to change its terms or make a new will, is why resort is had to the courts by those interested in its execution.

Our conclusion is that, for the reasons stated, the find-

ing and decree can not be sustained under the evidence. The decree is therefore reversed and set aside, and the cause remanded, with direction to enter judgment in favor of those entitled to the expectant estate, in conformity with the views herein expressed.

REVERSED AND REMANDED.