FREDERICK GEORGE, APPELLEE, v. MARY PRACHEIL ET AL., APPELLEES; JOSEPH VRBSKY, APPELLANT.

FILED SEPTEMBER 28, 1912. No. 17,033.

Judicial Sales: SALE BY REFEREE: COMPLETION OF BID. Where a bidder at a referee's sale, shortly before the sale was closed, claimed that a railroad company owned and occupied a right of way across the tract offered which reduced the number of acres to be conveyed, and so should reduce the aggregate of the sum to be paid; held, (1) under the evidence, that the alleged ownership and the occupation of such right of way strip by the railroad company constituted merely an easement likely to be divested under the terms of the deed if it abandoned the road or changed its track therefrom, and that the court authorized the sale of the tract as a whole, and that the purchaser could not impose terms upon the referee or make a bargain with him unauthorized by the court; (2) that, the court having authorized the sale of the tract as a whole, the purchaser took such rights only as the referee could convey to him, which included the whole tract, subject to the easement of the railroad company; (3) that a bid at a referee's sale is only a proposal to buy, which may be withdrawn by the bidder at any time before the crier signifies his acceptance thereof (Nebraska Loan & Trust Co. v. Hamer, 40 Neb. 281), but, appellant's bid in this case having been accepted without any intimation of withdrawal, he is liable at the rate per acre bid by him for the entire 80-acre tract offered for sale by the referee.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. Affirmed.

Bartos & Bartos, for appellant.

J. G. Beeler, contra.

9

HAMER, J.

Joseph Vrbsky was the purchaser at a referee's sale of the southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter of section 34. in township 7 north, of range 4 east of the 6th P. M., in Saline county. At a hearing in the district court for Lincoln county an order was made that the purchaser, Vrbsky, pay to the referee $524.60 as a balance of the purchase price of a tract of 80 acres of land sold at a public sale held by a referee under an order of the district court for Lincoln county. The court found: "That said land was offered in a tract of 80 acres. * * * That said Joseph Vrbsky offered therefor $86 per acre for the tract, and that his bid was accepted; that just prior to the time that his bid was accepted, and just before the sale was closed, a question was raised by said bidder as to whether said tract contained 80 acres, and it was claimed that the railroad had a deed for 6.10 acres through said tract; that after some negotiations between the parties, some understanding was arrived at, upon which the evidence is conflicting, the referee claiming that said Joseph Vrbsky was to pay $86 per acre for 80 acres, and said Joseph Vrbsky claiming *that the court should determine the title by which the railroad sold its strip through said premises.*" The court then found that the deed to the railroad company contains language as follows: "Do hereby grant and convey unto the said railroad company and to their successors and assigns forever the following piece or parcel of land, situate in the county of Saline, state of Nebraska, to wit: A strip of land through the northeast quarter (N. E. ¼) of the southwest quarter (S. W. ¼) and the southeast quarter (S. E. ¼) of the northwest quarter (N. W. ¼) of section thirty-four (34), in township seven (7) north, of range four (4) east, according to the survey and located line of said railroad company, one hundred (100) feet in width, being fifty (50) feet on either side of the center line of the road of said company as located or to be

located by the engineer of the said railroad company for the construction of the same from the city of Omaha, in Douglas county, in said state; to such point as may be herein designated, to have and to hold the same unto the said railroad company and to their successors and assigns forever, provided that in case said railroad company do not construct their road through said tract, or shall after construction permanently abandon the route through said tract of land, then the same shall revert to and become reinvested in the said grantors, heirs and assigns." It is further found that Vrbsky paid to the referee on the day of sale $1,061.65, and that he has since paid $5,293.75, making a total of $6,355.40, and that these payments were made with the knowledge upon the part of the said Vrbsky that the said railroad crossed said land, and with the knowledge of the provisions of said deed. The court further found that the said railroad company took only an easement in the land occupied by its railroad, and that the intention of the grantors and of the grantee, the Omaha & Northwestern Railroad Company, was that only an easement should be created by the deed, and that such easement should be used for the construction of this line of railroad through said lands, and should revert to the said grantors, their heirs and assigns, if said railroad company did not construct their road through said tract, or should after construction permanently abandon the road. The court then found it unnecessary to pass upon the question as to just what arrangements were made between the referee and said Vrbsky, as the above finding of the court as to the said strip of land through said described premises being an easement made said Vrbsky liable for the payment of $86 per acre, making the total sum to be paid $6,880, upon which said Vrbsky had paid $6,355.40, leaving a balance unpaid of $524.60. The court then adjudged that said Vrbsky pay to the referee the said remainder unpaid, with interest at 7 per cent., and that the referee deliver to him upon such payment a deed for the premises.

This case is an appeal from this order of the district court. There is no notice to be taken of the original partition suit, and there is no question of the regularity of the proceedings in any way. There is only the question as to whether the purchaser shall pay for the 6.10 acres of land occupied by the railroad track. It is said in appellant's brief that "it must be conceded, we think, that if said deed is merely an easement, then the appellant herein, being charged, as the court has found, with notice thereof, must fail in his appeal." Counsel cite numerous cases showing that the violation by the grantee of a condition touching forfeiture causes the land to revert to the original grantor or his heirs. The court will look at the entire deed for the purpose of ascertaining what the grantor and grantee intended. The use of the word "forever" in connection with the provision that, if the railroad company did not construct its line through the tract and should abandon its route, then the same shall revert to and become reinvested in the grantors and their heirs and assigns, is not inconsistent with the purchaser's contention that the grantor permanently disposed of his interest. The intention of the grantor and grantee would seem to be that if the road is not built the title shall revert, or if it is abandoned then the title shall revert. The conveyance is apparently for the purpose only of enabling the road to occupy the strip for right of way alone, and that can give no more than an easement. It is beyond the power of the purchaser to compel the court to try title to the land purchased by him before he buys and pays for it. The purchaser can only take such title as the referee has to give him, and only so much land as the referee has to sell, and when the referee sold the tract described he did not warrant title to the strip. It was the duty of the referee to sell that strip along with the other land included in the government subdivisions which he was selling. A sale made by a referee is a sale by the court. It is analogous to a sale made under the direction of the court in a case of mortgage foreclosure under order of sale, or a sale of

real estate under an execution. The action of the referee or of the sheriff or other administrative officer of the court is simply a sale of what there is to offer, and no more and no less. We do not believe that the purchaser may impose terms or conditions of any kind upon the referee or the sheriff or other person authorized to conduct the sale. If so, then the purchaser can substitute the condition of his bid for the conditions of the decree.

In the case of the *Nebraska Loan & Trust Co. v. Hamer*, 40 Neb. 281, it was held (*a*) that a judicial sale must be made in accordance with the decree of the court, and its terms cannot be changed by agreement of parties or counsel not incorporated into the record; and (*b*) the officer conducting the sale is not required to entertain any bids coupled with conditions not in conformity with the terms of the decree. In that case there was a proposed purchaser bidding more than the purchaser who obtained for itself the order of confirmation, but if the bid was higher it was "subject to all prior liens except $1,568.70." In that case it was the contention of the agent of the purchaser that the decree in the case was rendered in pursuance of a stipulation which was entered into to the effect that the trust company creditor would be satisfied with the collection of the $1,568.70. It was the contention of the debtor, the Nebraska Land, Stock Growing & Investment Company, that upon the payment of this $1,568.70 it was entitled to have the decree set aside, and the bids of the proposed purchaser, or at least some of them, were made with that purpose in view. The affidavits on file in that case are said by the opinion to show that the condition attached to the bids of the prospective purchaser was for the purpose of enforcing the understanding had between the Nebraska Land, Stock Growing & Investment Company and the creditor, the Nebraska Loan & Trust Company. In that case Commissioner IRVINE, delivering the opinion of this court, cited *Swope v. Ardery*, 5 Ind. 213, to the effect that the bid was wholly inadmissible, and, also, *Moore v. Owsley*, 37 Tex. 603, where it was held:

"We understand the law governing sales at public auction to be, where the sale is advertised to be on specific and restricted terms, any bid made at that sale not in strict conformity with the terms advertised is no bid at all, and the crier is not bound to notice the same."

Counsel for appellant say in their brief: "The court held that the said condition in said deed was in law a condition subsequent, and that the failure on the part of the railroad company to comply therewith operated as a forfeiture of the estate conveyed." *Hamel v. Minneapolis, St. P. & S. S. M. R. Co.*, 97 Minn. 334; *Jetter v. Lyon*, 70 Neb. 429; *Louisville & N. R. Co. v. Covington*, 65 Ky. 526. An examination of these authorities seems to justify the conclusion reached by counsel. This conclusion, fully expressed, would seem to be that whatever title, right or interest in the land has been conveyed to the railroad company reverts to the original grantor, his heirs or assigns, if there is a forfeiture depending upon the condition of the deed being broken, and the same is broken.

In *Hamel v. Minneapolis, St. P. & S. S. M. R. Co.*, supra, the plaintiff had conveyed a strip of land for right of way purposes across his farm and two strips adjoining thereto, one on the north and one on the south, for yard and station purposes to the Minneapolis & Pacific Railway Company, subject to all the rights and liabilities to which the defendant had succeeded. The consideration for the conveyance was: " 'If said second and third strips shall not be used for station purposes for the period of one year at any one time, the same and said first strip shall revert to and revert in the the party of the first part.' *Held*, (*a*) that the condition was in law a condition subsequent, and that a failure on the part of the railroad company to comply therewith operated as a forfeiture of the estate conveyed; (*b*) that the words 'station purposes,' as used in the contract, were intended by the parties to mean to refer to a regularly operated railroad station, at which business might be conducted with the railroad company as at its other stations; and (*c*) that, as defendant has

failed to comply with the conditions by maintaining such a station, title to the property in question reverted to plaintiff."

In *Jetter v. Lyon, supra,* it was held: "A condition in a deed conveying real estate, by which it is provided 'that no malt, spirituous or vinous liquors shall be kept or disposed of on the premises conveyed, and that any violation of this condition, either by the grantee or any person claiming rights under him or her, shall render the conveyance void, and cause the premises to revert to the grantors, his heirs and assigns,' is a valid condition subsequent which, until broken, runs with the land. On a breach of such condition the grantor, if living, or, if dead, his heirs, may claim a reversion of the estate and can maintain an action in ejectment to recover it." The opinion in that case was delivered by Judge BARNES who was then one of the commissioners. It is said on page 433 of the opinion: "The provisions of the deeds in question constituted a condition subsequent. The title to the property vested in the several grantees, and, finally, in Jetter, conditionally, to be divested on his failure to comply with the conditions by which it was provided that he should hold it. * * * The condition was a valid one, and in all of the adjudicated cases has been held to be a condition subsequent which runs with the land, until broken." Numerous authorities are cited, including, among others, *Smith v. Smith,* 64 Neb. 563. It is further said in the opinion: "The provisions of the deed seem plain to us, beyond all question. There can be no doubt as to what was intended by the parties thereto. And, while its language clearly shows it was intended that Ramey should be bound by a personal covenant never to sell, or permit to be sold, intoxicating liquors on the premises, yet, it still more clearly shows it was further intended that the estate in the premises should be conveyed merely upon the condition that neither Ramey, nor any one holding under him, should ever do any act prohibited by the covenant. * * * We hold that, by the language contained in the deed from Lyon to

Ramey, a valid condition subsequent was created upon the continued observance of which, by the grantee and those claiming under him, the estate conveyed to them depended; and that, whenever either of them committed a breach of the conditions, the grantor, if living, or, if dead, his heirs were at liberty to claim the estate and could maintain a suit in ejectment to recover it."

In *Louisville & N. R. Co. v. Covington, supra,* the Louisville and Nashville road had come into possession of the Portage railroad company and all its rights of way by purchase. It took up part of the track and ceased to use a certain other part. In a suit brought by the heirs for the entire right of way conveyed by E. M. Covington, alleging that the right of way had been abandoned and that the Louisville and Nashville road had no right to purchase or hold any part of it, *held* "that the law imposed the additional condition upon the conveyance that the right of way should continue to be used for the purposes contemplated, and that a reversion would result from abandonment or nonuser; that, as to that part of the right of way from Adams street to the town terminus, the abandonment was complete, and plaintiffs were entitled to recover it, but, as to the remainder of the right of way, which has continued to be, and is still, used for a railway, as contemplated in the conveyance, there is no forfeiture or abandonment."

"A partition sale is a judicial sale." *Kazebeer v. Nunemaker,* 82 Neb. 732.

"All sales made by order or decree under the direction of the court and requiring confirmation by the court are judicial sales." *Kazebeer v. Nunemaker,* 82 Neb. 732. "The purchaser at a judicial sale upon the foreclosure of a mortgage upon confirmation acquires the title of all the parties to the action, and nothing more." *Kerr v. McCreary,* 84 Neb. 315. It is not the land itself that is sold at the judicial sale, but only the interests of the parties to the suit. *Currier v. Teske,* 84 Neb. 60. At the foreclosure sale the bidder was John Campbell, the owner of

the mortgage deed and the plaintiff in that action, and the sale was confirmed "to the purchaser, John Campbell. * * * The sheriff's deed recites that Schmideke was the purchaser at the sale. Under these circumstances, after the lapse of so many years, and considering that Campbell never made any claim that the deed was void, and through his agent accepted and retained the purchase money and caused the deed to be executed to Schmideke, it will be considered that he became by equitable assignment the owner of Campbell's interest in the bid, that the deed was made pursuant to such assignment, and that he thereby became vested with all interests that Campbell then had. The purchaser at a foreclosure sale buys all the interests of all the parties to the suit. Code, sec. 853; *Young v. Brand,* 15 Neb. 601; *Dodge v. Omaha & S. W. R. Co.,* 20 Neb. 276; *Buchanan v. Griggs,* 18 Neb. 121. That which was sold, therefore, was the life estate of Eugene Currier and Campbell's unforeclosed mortgage on the plaintiff's equity of redemption. At the sale the interest of the defendant sold for $500, while the amount of the decree was $367.87. The proceeds of the defendant's interest, therefore, paid the mortgage debt and extinguished the lien on plaintiff's equity of redemption. So that, when Campbell sold to Schmideke, he sold the life estate which he had foreclosed upon and purchased, and that alone. * * * The defendants assert that it was 'the land itself' that was sold, and not the life estate, but this cannot be true. The interests alone of the parties to the suit were sold. To hold otherwise would be to deprive one of property without due process of law. The purchaser at a foreclosure sale must advise himself of the title he buys, and when the real owner of the fee is not made a party he cannot deprive him of any of his rights by the purchase." "A foreclosure sale of lands and tenements, unless the decree otherwise provides, transfers to the purchaser every right and interest in the property of all the parties to the action." *Arterburn v. Beard,* 86 Neb. 733. The bid only amounts to a proposal to buy, and until the crier of the

sale, by the fall of the hammer or other recognized act of acceptance, signifies assent to the proposal there is no contract, and the proposal may be withdrawn. *Nebraska Loan & Trust Co. v. Hamer*, 40 Neb. 281; *Fisher v. Seltzer*, 23 Pa. St. 308; *Blossom v. Railroad Co.*, 3 Wall. (U. S.) 196; *Payne v. Cave*, 3 T. R. (Eng.) 148. Before the purchaser paid any money he knew what the facts were. He knew that the railroad occupied the strip. He therefore bought with his eyes open. It was his business to see what his legal rights were before he paid any money down on the purchase. In *Fisher v. Seltzer, supra*, it was said: "The brief interval between the bid and its acceptance is the reasonable time which the law allows for inquiry, consideration, correction of mistakes, and retraction. This privilege is of vital importance in sheriff's sales, where the rule of *caveat emptor* operates with all its vigor."

Under the evidence and the authorities cited, we conclude, first, that the whole tract of land offered, being 80 acres and including the strip of land across it occupied by the railroad company as its right of way, was included in the sale, and that the alleged ownership of the railroad company and its occupation of the right of way constituted merely an easement, likely to be divested if the railroad company abandoned its road or changed its track therefrom; second, that the purchaser could not impose terms upon the referee or make a bargain with him which was unauthorized by the court; that the court authorized the sale of the 80-acre tract as a whole, including the right of way of the railroad company, and that the purchaser took such rights only to the land as the referee had and could convey to him under the order of the court; third, that the bidder was not obliged to take the land because of his bid, and that the bid only amounted to a proposal to buy which might be withdrawn at any time until the crier signified his assent to the proposal, but as he did not withdraw his bid, and the same having been accepted without any intimation of withdrawal, appellant is liable at the rate per acre ($86) bid by him for the entire 80-acre tract offered for sale by the referee, including the right of way.

The judgment of the district court is sustained by the evidence and the decisions of this court, and it is

'AFFIRMED.

ROSE, J.

I concur in affirmance.

SEDGWICK, J.

I concur in the result affirming the judgment.