HARRY LEE JILES et al., Minors, by their Father and Next Friend, Claude Jiles, Plaintiffs-Appellants, v. FLORENCE J. FLEGEL, Individually and as Exr. and Trustee under the Last Will and Testament of Harry Flegel, Deceased, et al., Defendants-Appellees.

(No. 11608;

Fourth District—December 20, 1972.

Yoder, Yoder, Luedtke & Hartweg, of Bloomington, for appellants.

Arlo E. Bane, of LeRoy, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiffs' family name was "Flegel". Their father died, mother re-married and in the course of time they were adopted by the husband. Under the adoption decree, as is usual, they took his name—"Jiles". Next, plaintiffs' paternal grandfather died—his full name being Harry Flegel. His will provided that plaintiffs on the death of his wife would receive one half of his stocks, bonds and negotiable papers, if they first attained the age of 25, and:

> "* * * subject to the further provision that should any of my said grandchildren not carry the family name of their father, Harry Lee Flegel, except as the same may be changed from 'Flegel' by marriage, then they shall not be included in said distribution and such shares of those who do not so qualify shall be divided among the remaining grandchildren who do qualify to receive the same."

Plaintiffs ask, first, is this condition valid, and secondly, if valid, what is its effect? Their request in the trial court went unrequited. The matter was heard on complaint, answer, and reply, and the court, after hearing evidence, dismissed the cause for want of equity. The court reasoned that there was no present injury pleaded and the focus was upon future events and that equity generally does not entertain suits to declare the rights of parties on a state of facts which has not arisen and which may never arise.

■■ It is true we should be leery of adjudicating rights absent actuality. Courts decide real controversies and eschew the moot, the unreal, the hypothetical. Admittedly, plaintiffs are not yet 25, their grandmother is still alive—hence, to entertain this action *now* might indeed be a very idle judicial act. But simply because this happenstance might occur is not enough, in our opinion, to deny plaintiffs the office of a suit to construe a will and answer their questions. Both section 50 of the Chancery Act and section 57.1 of the Civil Practice Act authorize courts to "hear and determine complaints to construe wills" and "in cases of actual controversy, make binding declaration of rights, * * * of the construction of * * * any * * * will * * *." (Ill. Rev. Stat. 1971, ch. 22, par. 50 and ch. 110, par. 57.1.) In *Jusko v. Grigas*, 26 Ill.2d 92, 186 N.E. 2d 34, it was said that courts will take jurisdiction to hear and determine complaints to construe wills "where there is doubt or uncertainty as to the rights and interests of the parties arising under such wills" and will determine "such questions within its jurisdiction as are relevant to the inquiry". Here we cannot help but note in passing (without regard to validity) that it was certainly grandfather's intention, as we divine it, that the grandchildren *must* assume their father's name *before* they can

take under his will. Indeed, the phrase applicable to the sole grand-daughter, excepting her from such carrying, still implies that she would have carried the family name prior to marriage—"except as the same may be changed from 'Flegel' by marriage". We forbear characterizing this intent as creating a "condition precedent", as such phrase is far too loaded with hoary implications. Clearly, it was the grandfather's intention to put plaintiffs to a choice—they could keep the name "Jiles" or they could "carry" his name and they certainly have a right to know now—indeed they must know now—whether, at the very least, they even have to make this choice. They should not be left in the position of having to guess as to its validity and purport after having asked for a resolution of their doubts. If there is one thing people are entitled to expect from courts, it is a statement as to the rules of law which will intelligently guide them in so important a decision as what they must do or not do to lose or gain an inheritance.

██ Is the condition valid? There are no Illinois cases. We must look for what guidance there is to other states and to England. It is in the latter, as might be expected, where the majority of cases arise. They are collected in 38 A.L.R.2d 1343. Conditions of this kind are known in English law as "name and arms" clauses—very apt. The clause, so the annotation tells us, is for the purpose of imposing on one the condition that he shall assume "the surname and arms of the testator" with a direction that if he neglects to do so, the estate shall devolve to others. It concludes:

> "None of the various forms in which the condition may be drawn seems to be, *ipso facto*, invalid, so that generally failure to comply with their terms results in forfeiture of the beneficiary's gift."

This accords with the familiar rule that a testator has the rights to attach to a gift any lawful terms, no matter how whimsical or capricious. Of course, the 'catch' is in the word "lawful". Obviously, whimsicality cannot be carried to the extent of attaching conditions which are against public policy or in the phrase of the *Restatement*, against "societal interest". Restatement of Law, Property, IV, Sec. 438; *National Bank of Commerce v. Greenberg*, 195 Tenn. 217, 259 S.W.2d 765, 38 A.L.R.2d 1337.

Plaintiffs argue that grandfather's "name and arms" condition, at least in their situation, is disruptive of an existing family relationship, therefore contrary to societal interest and public policy. The argument is a fairly good one. They correctly point out that our adoption laws go to great lengths to protect an adoptive father's rights from intrusion by the natural father—"To permit such a condition in a Will to be valid would be in effect permitting indirectly intrusion into the adoptive father's

relationship by the family of the natural father and make pawns out of innocent children who are told they must reject the name of their adoptive father, who has loved and raised them, if they desire to share in an inheritance given to them in someone else's Will." The estate here is substantial, so if the condition is valid, plaintiffs are put to a very dear election. In our view, however, it is not a choice so much as between their adoptive father and their natural father's family, rather it is simply a choice of whose name to "carry". Plaintiffs, as we have seen, shift the emphasis saying that it "is not a small wedge that the testator is attempting to put between plaintiffs and their adoptive father" and that "pride in one's parent and pride in one's name is a most essential part of the parent-child relationship". They conclude by asking us not to tolerate "another person through his Will taking this part of the relationship away."

■■  The condition for sure does have a strange ring to American ears—witness no cases in Illinois and very few elsewhere in the United States. Pride in one's name, a desire to perpetuate it through succeeding generations, is certainly a not unusual—indeed, a commonplace aspiration. It is odd this void in decisional law when this urge is, as we have said, not unusual. However, the A.L.R.2d annotation cited above does refer to cases where the condition was held void. In Nebraska, the condition was once upheld, but recently, held to be unreasonable, whimsical, and hence void. In *Smith v. Smith*, 64 Neb. 563, 90 N.W. 560, a "name and arms" condition was upheld which required a devisee to be "baptised and christened Finley Smith and none other name but Finley Smith, and that he should maintain and be known by that name during his natural life". This case was overruled in *Cast v. National Bank of Commerce*, 186 Neb. 385, 183 N.W.2d 485. There a devise was subject to the condition that the devisee adopt the testator's surname and if he failed to do so, the devise reverted to the residuary legatee, was held bad. There being doubt in the law as to validity, the court must resolve this issue on remand.

■■  Plaintiffs contend next that even if valid, the condition is so vague as to be incapable of enforcement. They question whether the word "carry" has much purport—"that should any of my said grandchildren not carry the family name"—in the sense of advising them what they must do should they try to bring themselves within the condition. They ask, in this regard, did grandfather mean by "carry" that they were to legally change their name? or does "carry" mean to use it at all times? or would it be enough to "carry" "Flegel" as a middle name? or is "carry" satisfied by limiting the use of the name, say, to a driver's license or social security card? They also ask as to whether the condition relates only to

the time of receiving their inheritance? and if they do "carry" the family name on that day only, does that suffice? Of course, the transitive verb "carry" is not inexact of meaning—in our context, it means to "assume", the verb generally used in "name and arms" clauses as the A.L.R.2d annotation makes clear. Accordingly, on remand, the circuit court must also decide the purport and effect of this condition.

■■ Plaintiffs inquire as to what would happen to this one half share if none of them qualify, the implication being that lack of specificity as to just that renders the condition void. Also, they wonder about certain provision made for their cousins, the children of a brother of their natural father. They suggest that the rule against perpetuities might be violated. Another question, which the circuit court should answer is what do they take if they do qualify. The paragraph they are concerned with reads that "the remaining one-half of the stocks, bonds and negotiable papers shall be divided" between the plaintiffs "subject to the provision * * * that they shall attain the age of twenty-five years prior to receiving their share of *said bonds*." Plaintiffs ask specifically what "said bonds" means. On remand this too can be inquired into.

■■ With regard to the other questions they have posited, unlike the questions as to validity and purport, there is really no present controversy as to which plaintiffs really need to be advised. As to what will happen if none qualify, is to ask a question *in vacuo*. If and when plaintiffs arrive at the age of 25 and thereafter the life tenant dies and *none* qualify, it will be time enough then to have a resolution of any doubts that might exist. The same may be said with even more emphasis, as to the request for a ruling as to whether certain terms of the will violate the rule against perpetuities—the question will probably never arise. If it does, it can be dealt with then.

Reversed and remanded for further proceedings not inconsistent with this opinion.

CRAVEN, P. J., and TRAPP, J., concur.