STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE, V. UNION
PACIFIC RAILROAD COMPANY, A UTAH CORPORATION, APPELLANT.
490 N.W.2d 461

Filed October 9, 1992.   Nos. S-89-1144, S-89-1345, S-89-1347.

Brenda J. Council for appellant.

Robert M. Spire, Attorney General, and Jeffery T. Schroeder for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

These appeals involve three separate cases. Case No. S-89-1144 was filed in Custer County, Nebraska; case No. S-89-1345 was filed in Dawson County; and case No. S-89-1347, in Buffalo County. Since the cases involve similar questions, they will be considered together. Both defendant-appellant, Union Pacific Railroad Company (hereinafter Railroad), and plaintiff-appellee, State of Nebraska, Department of Roads (hereinafter State), filed motions for summary judgment in each case. Each motion was submitted on stipulations between the parties, affidavits, and the pleadings. The stipulations included deeds to the State and to the Railroad as to the property in question. There was no factual dispute.

The district court in each county sustained the State's motion and denied the Railroad's motion. The summary judgment granted in the district court in each county quieted title in the State to the lands in question.

The Railroad timely appealed in each case and in this court assigns the same three errors in each case. The Railroad contends that the trial court erred (1) in determining that, as a matter of law, the Railroad and its predecessors in title obtained only an easement in the property it acquired; (2) in determining that upon the Railroad's abandonment of rail service over the acquired property, the State obtained title to the one-half of the property abutting state Highway 40; and (3) in sustaining the State's motion for summary judgment and denying the Railroad's motion for summary judgment. We reverse.

The record in each case before us shows the facts before the district courts and this court as set forth in the stipulations filed with the respective trial courts. The record shows that the Railroad's predecessors in interest acquired property by "Right of Way Deeds" in Buffalo, Custer, and Dawson Counties. The majority of the deeds were executed in 1886, with a few executed in 1887, some in 1890, and one in 1892. The language of the right-of-way deeds will be set out below. The land was used in the Railroad's operation of what came to be known as

the Kearney Branch, which extended generally from Kearney, Nebraska, north and west to Callaway, Nebraska.

In the 1930's and 1960's, the State, by general warranty deeds, acquired property which abuts the railroad line. The State's land is located parallel to and south and west of the Railroad property for the length of the Kearney Branch. The land was purchased by the State for construction of Highway 40.

In the early 1980's, because of decreasing traffic levels on the Kearney Branch line, the Railroad requested and obtained Interstate Commerce Commission approval to abandon rail service over much of that line. The Railroad removed its track from these portions of its line, and has, since that time, been negotiating with interested parties, including the State, to sell the property.

In summary, the State's position is that the Railroad's right-of-way is an easement and, once abandoned, reverts to the owners of the land adjoining the easement. The State purchased its right-of-way from the assigns of the Railroad's original grantors, and out of the same original tracts of land from which the Railroad's right-of-way came. The State asserts that as an owner of land abutting the Railroad's right-of-way, the State owns the land to the centerline of the Railroad's abandoned right-of-way, and therefore, that land must revert to the State. The Railroad asserts that it held possession pursuant to warranty deeds which contained a clause providing for the possibility of reverter to the original grantors in the event that the Railroad ceased to use the land for railway purposes; that under current law, the possible reversion is void as against public policy; and that the land belongs, in fee, to the Railroad, pursuant to the original warranty deeds to its predecessors in title.

As stated above, the Railroad has appealed from the granting of summary judgment to the State and from the denial of its motion for summary judgment. As we stated in *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 397, 470 N.W.2d 772, 775-76 (1991):

[A]lthough the denial of a motion for summary judgment is not a final order and thus is not appealable, when

adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both of the motions and may determine the controversy which is the subject of those motions, making an order specifying the facts which appear without substantial controversy and directing such further proceedings as it deems just. *Licht v. Association Servs., Inc.*, 236 Neb. 616, 463 N.W.2d 566 (1990).

Each of the district courts sustained the State's motion for summary judgment and quieted title to the southwest one-half of the Railroad right-of-way in the State.

"A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. . . . In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence."

*Wiles v. Metzger*, 238 Neb. 943, 948, 473 N.W.2d 113, 118 (1991).

Additionally, since the parties in each of the cases seek to quiet title to the property in question, the cases are in equity. Our review, therefore, is de novo on the record. See *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992).

The Railroad's first assignment of error asserts that the trial court erred "in determining that, as a matter of law, the estate taken under the deeds by which Defendant acquired the subject property was an easement." The Railroad contends instead that its predecessors in interest acquired a defeasible fee simple.

The disposition of this question is pivotal to the Railroad's claims. If the estates conveyed to the Railroad's predecessors in title were easements, as the State contends, the law of Nebraska is clear that on abandonment of railroad use, title to the land contained within the right-of-way would revert to the adjoining

landowner, which is the State in these cases. See *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982).

The rule in Nebraska is that an otherwise effective conveyance of property transfers the entire interest which the conveyor has, and has the power to convey, unless an intent to transfer a less interest is effectively manifested. Neb. Rev. Stat. § 76-104 (Reissue 1990); *Sun Oil Co. v. Emery*, 183 Neb. 793, 164 N.W.2d 644 (1969).

An estate in fee simple determinable is created by a special limitation which, in an otherwise effective conveyance of land, creates an estate in fee simple and provides that " 'the estate shall automatically expire upon the occurrence of a stated event.' " *Ohm v. Clear Creek Drainage District*, 153 Neb. 428, 431, 45 N.W.2d 117, 119 (1950). The term "special limitation" is defined as one which causes the created interest to terminate automatically, such as a transfer of Blackacre to " ' "B and his heirs so long as the town of C remains unincorporated." ' " *Id.* See, also, Ronald R. Volkmer, *The Law of Future Interests in Nebraska (Part One)*, 18 Creighton L. Rev. 259 (1985).

In *Ohm*, we also stated, "A deed which conveys an estate in fee simple, but provides [that] the grantor or his successor has power to terminate this estate, upon the happening of some event or condition, creates an estate in fee simple subject to a condition subsequent." 153 Neb. at 432, 45 N.W.2d at 120. The difference between the two types of deeds is that in the case of a fee simple defeasible, the estate will automatically terminate on the occurrence of a stated event, while a fee simple subject to a condition subsequent does not terminate automatically, but only if a person having the power chooses to exercise the power of termination. In *Ohm*, we held that the deed involved "created and conveyed . . . an estate in fee subject to a condition subsequent." 153 Neb. at 432, 45 N.W.2d at 120. Similarly, in the cases before us, since the condition is not expressed in the granting clauses, we determine the deeds herein convey a fee simple estate subject to a condition subsequent.

The Railroad is the successor in interest to all the land in question. Its predecessors received title from the original owners of the land through deeds, each entitled "Right Of Way Deed." The Railroad's predecessors were the Omaha and

Republican Valley Railway Company of Nebraska (88 deeds) and the Kearney and Black Hills Railway Company (7 deeds). Each deed contains virtually the same preprinted or hand-copied language, except for necessarily unique portions, such as the consideration, the legal description, and sometimes, the width of the land conveyed. The Omaha and Republican Valley deeds provided in pertinent part:

> Know all Men by these Presents, That [the Grantors] For the consideration of . . . Dollars in hand paid by the Omaha and Republican Valley Railway Company of Nebraska a corporation organized under the laws of the State of Nebraska, the receipt of which is hereby acknowledged, do hereby GRANT and CONVEY unto the said Railroad Company and to their [sic] successors and assigns forever, the following piece or parcel of land, situate in the County of . . . and State of Nebraska, to-wit: A strip of land through . . . two hundred (200) feet in width, being One Hundred feet on either side of the centre line of the Road of said Company as located or to be located by the Engineer of said Railroad Company.
>
> TO HAVE AND TO HOLD the same unto the said Railroad Company and to their [sic] successors and assigns forever. *PROVIDED*, That in case said Railroad Company do [sic] not construct their [sic] road through said tract, or shall after construction permanently abandon the route through said tract of land, then the same shall revert to and become reinvested in the said grantors, their heirs or assigns.

The Kearney and Black Hills deeds granted and conveyed to the Railroad

> the following tract or parcel of land situate in the County of . . . and State of Nebraska to-wit . . . .
>
> TO HAVE AND TO HOLD unto the said Railway Company, its successors and assigns forever.
>
> PROVIDED, That in case the said Railway Company does not construct its line of railway through the said tract of land, or if after construction it shall permanently abandon the same, then the said tract or parcel of land shall revert to and be reinvested in the grantor . . . herein.

The language of the granting clauses of these deeds makes no reservation of any rights to the grantors. The grants are of "pieces," "parcels," or "tracts" of land, not rights to cross over or use the land described. This language indicates an intent on the part of the conveyor to convey all of the rights associated with the land. See Annot., 6 A.L.R.3d 973 (1966).

We have held that it is the intent of the parties, manifested within the language of the entire instrument, which determines the nature of the conveyance. *Bode v. Flobert Industries, Inc.*, 197 Neb. 488, 249 N.W.2d 750 (1977) (overruled in *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982), to the extent that this court determined in *Bode* that a grantor who excepts from conveyance a railroad right-of-way retains fee title to property underlying the easement).

The State responds to the Railroad's contentions by urging that "in Nebraska . . . Right-of-Way Deeds used by railroad companies to acquire railroad right-of-way convey only an easement to the railroad, and not a fee simple estate in the property." Briefs for appellee at 6 and 7. Appellee cites three cases in support of this proposition: *Simacek v. York County Rural P.P. Dist.*, 220 Neb. 484, 370 N.W.2d 709 (1985); *Bode v. Flobert Industries, Inc., supra*; and *George v. Pracheil*, 92 Neb. 81, 137 N.W. 880 (1912), *overruled in part on other grounds, Commercial Fed. Sav. & Loan v. ABA Corp.*, 230 Neb. 317, 431 N.W.2d 613 (1988).

In *Simacek*, the issue before the court was "whether the defendant [power company] acquired a prescriptive easement to maintain the powerline on plaintiffs' property." 220 Neb. at 485, 370 N.W.2d at 710. In that case, the predecessor in title to the plaintiffs, the owners of a quarter section of land, had conveyed to a railroad company, " 'for the purpose of constructing a Railroad thereon, and for all uses and purposes connected with the construction and use of said Railroad, a strip of land One Hundred feet in width' over and across the land owned by the plaintiffs." 220 Neb. at 484, 370 N.W.2d at 710. The deed provided that in the event the railroad right-of-way was abandoned, it would revert to the grantor, his heirs or assigns. In turn, the railroad's successor had granted a written license to the defendant, York County Rural Public

Power District, to construct and use an electric power transmission line along the right-of-way. A transmission line was constructed in 1967.

In 1976, the next successor railroad in title abandoned the right-of-way and removed the trackage. The power district continued to use the transmission lines.

In 1983, the Simaceks, the owners of the land within which the railroad right-of-way existed, commenced the action against the power district. The railroad was not a party. Our opinion states that the action was for a declaratory judgment, to recover possession of the property, and for an injunction to compel the district to remove its transmission line from the property.

In *Simacek*, we assumed that the railroad had an easement for the right-of-way in question in that case. As stated above, the railroad was not a party to the Simacek action, and both Simaceks and the district assumed that the interest of the railroad was an easement over the property. In view of the language in the deed to the railroad, such an assumption fits squarely within the meaning of § 76-104 and the holding of *Sun Oil Co. v. Emery*, 183 Neb. 793, 164 N.W.2d 644 (1969). The intent of the original grantors in the *Simacek* case was clearly to convey land for the limited purpose of constructing and operating a railroad. Such a limited conveyance results in an easement, and the parties in *Simacek* and this court properly assumed an easement had been created. We then concluded that the power district's presence on the right-of-way was by license from the railroad and that the district's permitted use did not constitute adverse possession sufficient to satisfy this state's requirements for prescriptive easements. We concluded: "[W]e determine only that the defendant did not acquire an easement across the plaintiffs' land by prescription." 220 Neb. at 489, 370 N.W.2d at 712. *Simacek* does not support appellee's contention in the present cases.

*Bode v. Flobert Industries, Inc., supra*, also relied on by the State, required this court to determine whether two deeds conveyed an easement or a fee simple defeasible. The language of the deeds stated in the granting clause that the grantors,

"being desirous of the constructon [sic] of said railroad,

and to aid the same by the grant herein made . . . *do give, grant, bargain, sell, convey and confirm . . . for the purpose of constructing a railroad thereon,* and *for all uses and purposes connected with the construction and use of said railroad, a strip of land . . . .*"

(Emphasis in original.) *Bode,* 197 Neb. at 490, 249 N.W.2d at 752.

The habendum of the deeds stated the conveyances granted the railroad the land

"*[t]o have, hold, and enjoy . . . and the right to use the said land and material of whatsoever kind within the limits of the said one hundred feet above conveyed . . .* unto the said party of the second part . . . *and its successors and assigns, forever, for any and all uses and purposes connected with the construction, preservation, occupation and enjoyment of said railroad.*"

(Emphasis in original.) *Id.* at 490-91, 249 N.W.2d at 752.

Each of the deeds also contained a reversion clause similar to that found in the deeds in the present case. The language of the *Bode* deeds demonstrates an intent on the part of the grantor to limit the grant of land conveyed. The granting clauses of those instruments reveal that the grantors intended the land to be used only by the railroad and only for railroad purposes. Both the granting clause and the habendum of each instrument clearly set out that the conveyance was of a "right to use," and each deed later required reversion of the conveyance for failure to comply with the conditions. This plainly grants much less than a fee simple, and our holding that the deed conveyed only an easement was well founded. See, § 76-104; *Sun Oil Co. v. Emery, supra.*

In the granting clauses, the deeds in the cases before us convey the entire estate, with no exceptions, reservations, or specifications for use of the land. No conditions for use are placed upon the property. In each habendum, the grantors convey the entire estate. Black's Law Dictionary 710 (6th ed. 1990), states that in a deed it is the habendum clause "which defines the extent of the ownership in the thing granted to be held and enjoyed by the grantee." Also, this court has stated that ordinarily in the event of repugnancy and inconsistency between grant, habendum, and description clauses of a deed,

the granting clause will prevail. *City of Gering v. Jones*, 175 Neb. 626, 122 N.W.2d 503 (1963).

Immediately following the habendum, the grantors provide that the land will revert to them if the railroad fails to construct and maintain the road. The language of these deeds comports exactly with the requirements of the Restatement of Property § 45 at 133 (1936), which provides:

> An estate in fee simple subject to a condition subsequent is created by any limitation which, in an otherwise effective conveyance of land,
>
> (a) creates an estate in fee simple; and
>
> (b) provides that upon the occurrence of a stated event the conveyor or his [or her] successor in interest shall have the power to terminate the estate so created.

See, also, *Ohm v. Clear Creek Drainage District*, 153 Neb. 428, 45 N.W.2d 117 (1950). The *Bode* case does not support the State's position in the cases before us.

Finally, the State urges that the case *George v. Pracheil*, 92 Neb. 81, 137 N.W. 880 (1912), controls. In *George*, appellant Joseph Vrbsky, a purchaser of one-half of a quarter section of land at a referee's sale, questioned whether the land he purchased was an 80-acre tract or was a tract of 80 acres less 6.1 acres over which a railroad had constructed its tracks. It was the purchaser's contention that the land used by the railroad was held in fee simple subject to a condition subsequent. Thus, the purchaser contended that he should not have to pay for the 6.1 acres. The trial court ruled that the right-of-way was an easement and that Vrbsky had purchased 80 acres of land, with 6.1 acres of that land subject to the railroad easement. The holding of the trial court was affirmed on appeal to this court.

The State, in the present case, asserts that if this court had intended in the *George* case to hold that the railroad occupied the ground under a fee simple determinable, the purchaser would not have had to pay for the railroad right-of-way. The State notes that the *George* court specifically held that the ownership interest of the railroad constituted only an easement. The deed to the railroad contained language almost identical to that found in the deeds in the present case.

The trial court in *George* found that the railroad had only an

easement, to be used, on condition of reverter, for construction and operation of a railroad only. We stated that "[t]he court will look at the entire deed for the purpose of ascertaining what the grantor and grantee intended." 92 Neb. at 84, 137 N.W. at 882. We noted the use of the term "forever" was "not inconsistent" with an intent on the grantor's part to permanently dispose of his interest, when the term is found in conjunction with a provision of reverter. *Id.* The opinion then concludes that because of the reverter language, the conveyance must have been solely to enable the road to occupy the strip for right-of-way alone, "and that can give no more than an easement." *Id.*

Counsel in *George* offered three cases for authority supporting the purchaser's contention that " 'the said condition in said deed was in law a condition subsequent . . . .' " 92 Neb. at 86, 137 N.W. at 882. The *George* court then stated that an examination of these authorities seemed to justify the conclusion reached by counsel. The *George* court examined and discussed each case at length. Each case held that similar language to that found in the *George* deed constituted a condition subsequent.

This court concluded, however, that the deed in question created not a fee simple subject to a condition subsequent, but, rather, an easement. We stated that the conclusion that the *George* deed created a condition subsequent, "fully expressed, would seem to be that whatever title, right or interest in the land has been conveyed to the railroad company reverts to the original grantor, his heirs or assigns, if there is a forfeiture . . . ." 92 Neb. at 86, 137 N.W. at 882.

The *George* court concluded that such a sequence of events, whether as the termination of an easement, or reversion of a fee simple conveyance, would operate to reunite the entire 80-acre tract upon which the purchaser bid. Based on this, more than on the actual language of the conveyance, it would seem, the court held that the conveyance was an easement, that the segment of land was a complete 80-acre tract, and that the purchaser was liable for his $86-per-acre bid as to the entire 80 acres. A determination of the interest held by the railroad was important only as it affected the purchaser. The railroad was

not a party to the *George* case, and the decision therefore could not have competently determined the rights of the railroad.

To the extent, then, that *George v. Pracheil, supra,* interprets the language of the deed in that case to reflect an intent to convey an easement rather than a fee simple subject to a condition subsequent, it is overruled. The trial courts' determinations in the cases before us that the Railroad held only an easement in the property are incorrect.

The Railroad's next assignment of error contends "[t]he court erred in determining that, upon Defendant's abandonment of rail service over the subject property, Plaintiff obtained title to the one-half of the subject property abutting State Highway 40."

All three trial courts, in one form or another, determined that because the Railroad had an easement and had abandoned that easement, the land reverted to the owners of the abutting land. As stated above, had the Railroad obtained only an easement, the trial courts' holdings would have been correct. Since we have, however, determined that the Railroad obtained a fee title, we must then determine who has the title to the Railroad land, under the terms of the conveyances to the Railroad, after the Railroad abandoned its right-of-way use. As set out above, the deeds stated in that event, the land "shall revert to and become reinvested in the said grantors, their heirs or assigns." A literal reading of this clause would mean that title to the land in question would revert to the State in any event.

Neb. Rev. Stat. § 76-107 (Reissue 1990), however, provides in relevant part:

(1) The conveyance of an existing future interest, whether legal or equitable, is not ineffective on the sole ground that the interest so conveyed is future or contingent, except that possibilities of reverter or rights of reentry for breach of condition subsequent shall not be alienable or devisable.

(2) Neither possibilities of reverter nor rights of reentry for breach of condition subsequent relating to any property, whether created on, before, or after July 9, 1988, when the condition has not been broken, shall be valid for a longer period than thirty years from the date of

the creation of the condition or possibility of reverter or right of reentry. If such possibility of reverter or right of reentry is created to endure for a longer period than thirty years, it shall be valid for thirty years.

The Omaha and Republican Valley Railway Company and the Kearney and Black Hills Railway Company were the predecessors to the appellant railway company. The plain language of § 76-107 shows that the conditions subsequent expired either upon the conveyance of the land to the Railroad by its predecessors in title or, at the latest, after 30 years from the date of the conveyances to the Railroad. With this operation of law, the railroad obtained fee simple absolute. The trial courts' judgments that the State acquired title to the property because of the appellant's abandonment of the right-of-way were incorrect.

The facts of these cases were not disputed and the law, as applied to those facts, has herein been determined. We therefore reverse the judgment of each of the trial courts and remand the causes to the respective courts for orders to be entered consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.