KENNETH L. PURDUM ET AL., APPELLEES, V. GERTRUDE
SHERMAN ET AL., APPELLANTS.

81 N. W. 2d 331

Filed March 1, 1957. No. 34100.

*Courtney L. Vallentine* and *Stubbs & Metz,* for appellants.

*Dryden & Jensen,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiffs brought this suit to quiet title as against the defendants to the southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter of Section 31, Township 24 North, Range 29 West, Thomas County, Nebraska. The defendants Ball are the owners of the southwest quarter of the northwest quarter of Section 31 and they claim by adverse possession east of their east line thereof to the west

fence on the Chicago, Burlington & Quincy Railroad right-of-way, an area of 6 acres more or less. The defendant Sherman is the owner of the northwest quarter of the southwest quarter of Section 31 and she claims by adverse possession east of her east 'line thereof to the west fence on the Chicago, Burlington & Quincy Railroad right-of-way, an area of approximately 16 acres. Upon a trial to the court on the issues thus raised, the trial court found for the plaintiffs and quieted title in them, fixing the west boundary of plaintiffs' lands in accordance with a survey made at the instance of plaintiffs and set forth in the evidence. The defendants have appealed.

The plaintiffs became the record title owners of the southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter of Section 31, except the railroad right-of-way, on November 2, 1943, by deed. The defendants Ball became the record title owners of the southwest quarter of the northwest quarter of Section 31, except the railroad right-of-way, by deed recorded on January 24, 1938. The defendant Sherman became the record title owner of the northwest quarter of the southwest quarter of Section 31 by deed recorded April 1, 1940.

On or about June 20, 1953, plaintiffs employed Albert J. Van Antwerp, a qualified surveyor, to establish on the ground the west line of their land heretofore described in accordance with the description contained in their deed. The surveyor fixed the boundary line between the lands owned by the defendants and the plaintiffs. It is marked at a point located at the southeast corner of the northwest quarter of the northwest quarter by a stake, which stake is 15.91 chains due east from an old red cedar post located at the southwest corner of the northwest quarter of the northwest quarter of Section 31. The line from the last-mentioned stake runs south to another stake located at the southeast corner of the southwest quarter of the northwest quarter of

Section 31, which latter stake is located 15.84 chains due east of the government corner located at the southwest corner of the southwest quarter of the northwest quarter of Section 31. The line runs thence due south to a third stake located at the southeast corner of the northwest quarter of the southwest quarter of Section 31, which is 15.76 chains due east of the southwest corner of the northwest quarter of the southwest quarter· of Section 31, which last-mentioned corner is fixed at a point 20.09½ chains due south of the government corner described as being located at the southwest corner of the southwest quarter of the northwest quarter of Section 31. The old red cedar post, located at the southwest corner of the northwest quarter of the northwest quarter of Section 31, is 20.06 chains due north of the government corner heretofore described as being located at the southwest corner of the southwest quarter of the northwest quarter of Section 31. The line drawn through the three stakes is the boundary line between the lands of plaintiffs and defendants determined· by government surveys, the deeds of the parties, and the survey marked on the ground by Van Antwerp. Section 31 is a short section which accounts for the variance in the regularity of the tracts involved in the dispute. The line thus marked on the ground appears to have been accepted by the parties, at least no claim is made in this court that the boundary line established by Van Antwerp was incorrect. According to the survey, the railroad right-of-way crosses the northeast quarter of the southwest quarter and the southeast quarter of the northwest quarter of Section 31 in such a way as to leave approximately 16 and 6 acres, respectively, west of the west right-of-way fence within the described tracts.

It is the contention of the defendant Sherman that she has been in possession of and used the lands between her east line as fixed by Van Antwerp and the west fence on the railroad right-of-way for more than 10 years. The evidence shows the land in dispute is

grazing land. No fence was ever built which purported to be a line fence between plaintiffs and the defendant Sherman until after the Van Antwerp survey, which fence was immediately removed by the defendant Sherman. The Sherman cattle grazed to the west fence of the railroad right-of-way since the defendant Sherman became the owner, except in the years 1943, 1944, and 1945. It appears that during these 3 years the plaintiffs leased the northwest quarter of the southwest quarter of Section 31 from the defendant Sherman. They grazed the disputed lands in connection with the lands leased. When the lease expired, plaintiffs admit they gave up possession to the defendant Sherman and never attempted to take possession again until after the survey was made in 1953. The evidence of the defendant Sherman is that she had always claimed to the west fence on the railroad right-of-way and that she openly and exclusively used it as her own.

The plaintiffs claim that they had asserted their title to the disputed tract by paying the taxes, placing a mortgage on the land, by executing an oil and gas lease, and in securing a permit for a railroad crossing in 1948. The taxes, mortgage, and mineral lease included the disputed acreage only by the use of the description of the northeast quarter of the southwest quarter of Section 31 as it appeared in their deed. They indicate nothing more than the deed itself. With reference to the permit to cross the railroad right-of-way, it appears that plaintiffs had other lands west of the railroad right-of-way on which they grazed their cattle. There is no evidence that plaintiffs made any use of the permit, in fact the evidence shows that they crossed the railroad at a point further south and crossed the Sherman lands to make use of lands which did not include the disputed tract. There was no use of the right-of-way crossing which conflicted with the defendant Sherman's possession and use of the disputed tract of land. The evidence of Gertrude Sherman is that she did not know where

her east boundary line was, but that she always thought
it was the west fence of the railroad right-of-way. She
stated also that it was on this belief that she claimed and
used the lands up to the west fence of the railroad right-
of-way.

It is the rule in this state that if one by mistake en-
closes the land of another and claims it as his own to
certain fixed monuments or boundaries, his actual and
uninterrupted possession for 10 years or more will
operate as a disseizin and his title will be perfect. Tex
v. Pflug, 24 Neb. 666, 39 N. W. 839, 8 Am. S. R. 231;
Hallowell v. Borchers, 150 Neb. 322, 34 N. W. 2d 404.
It seems clear to us that the disputed land was unen-
closed except within the west fence of the railroad
right-of-way. There was not and never had been a
fence between the Sherman land and the disputed tract.
The cattle of the defendant Sherman had grazed over
the whole of it up to the right-of-way fence in excess
of the statutory period of 10 years.

The plaintiffs contend, however, that the defendant
Sherman had never actually claimed the disputed tract
and that her use of it was based only on a mistaken be-
lief that the west fence on the railroad right-of-way
was the true boundary line. The evidence sustains this
contention. The fact that one claiming title by adverse
possession never intended to claim more land than is
called for in his deed is not a controlling factor. It is
the intent with which possession is held rather than an
intention to hold in accordance with his deed that is
controlling. The claim of adverse possession is founded
upon the intent with which the occupant had held pos-
session, and this intent is ordinarily determined by what
he has done in respect thereto. Hallowell v. Borchers,
*supra.*

The rule is stated in Annotation, 97 A. L. R., p. 58,
as follows: "In a steadily increasing number of juris-
dictions, the possession is the important element, and it
is held that such possession is not the less adverse because

the person takes possession of the land in question innocently and through mistake. In other words, it is the visible and adverse possession, with an intention to possess land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor. Or, as said in 1 R. C. L. 733, 'the mere fact of possession is allowed to override the intention; and it is held that a possession beyond the true boundary lines, irrespective of the intention with which it was taken, becomes adverse.' " This statement was approved by this court in Hallowell v. Borchers, *supra.* See, also, Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196. It is evident, therefore, that while defendant Sherman did not know where the true boundary was, as shown by her deed, she occupied and used the disputed tract for grazing purposes for more than 10 years under the belief that the west fence on the railroad right-of-way was the boundary. It is evidence which establishes a use showing actual, open, exclusive, and continuous possession, and when such use has existed for the statutory period of 10 years, it is sufficient to sustain a claim of title by adverse possession.

The main contention advanced by the plaintiffs in this case is that the evidence will not support a finding that possession was taken and held under a claim of right, or title, or ownership. What constitutes such a claim has been one of the most controversial points in the law of adverse possession, and it has been most controversial where possession of the land has been taken under a mistake as to the location of the true boundary. We do not choose to belabor the question in this opinion, but since Hallowell v. Borchers, *supra,* we think the rule in this state has been as follows: Adverse possession is founded upon the intent with which the occupant has held possession and this intent can best be determined by his acts in relation thereto. The fact that a claimant may state that he never intended to claim

more land than was called for by his deed may or may not be given weight dependent upon the circumstances of each case. Ordinarily, however, in case of a mistaken boundary, more weight will be given to the nature of the possession of the occupier than to the mistake that was its cause. The law contemplates that one's rights in land may be lost to another by adverse possession. The real purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may within the period of limitation take action to protect his interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession. When, therefore, a claimant occupies the land of another by actual, open, exclusive, and continuous possession, the owner is placed on notice that his ownership is endangered and unless he takes proper action within 10 years to protect himself, he is barred from action thereafter and the title of the claimant is complete. It can readily be seen that the intent with which the claimant first took possession of the disputed tract is not ordinarily of too much significance. The title of the true owner is lost by his inaction. It would seem, therefore, that when the possession of the land of another, no matter what the intention may have been in making the first entry, amounts to that which the law deems as adverse to the true owner and such possession continues for the statutory period of limitation of 10 years, the adverse holding ripens into ownership in the absence of explanatory circumstances affirmatively showing the contrary such as occupancy under a lease, an easement, or a permissive use. City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 97 A. L. R. 1. See Annotation, 97 A. L. R. 14.

It is the contention of the defendants Ball that they have been in possession of and used the lands between their east line as fixed by Van Antwerp and the west

fence on the railroad right-of-way for more than 10 years. This tract was used primarily for grazing purposes, although there is evidence that hay was sometimes taken from it. No fence was ever built which purported to be a line fence between plaintiffs and the defendants Ball until after the Van Antwerp survey, which fence was immediately removed by the Balls. From the time the Balls became the owners in 1938 their cattle grazed to the west fence line on the right-of-way. The evidence shows an exclusive and continuous use of the 6-acre tract involved for more than 10 years. There is evidence that plaintiffs obtained a part of the hay cut on this tract in 1945. This was at a time when plaintiffs were in possession of the Sherman land to the south under lease. The defendants Ball had no knowledge that plaintiffs took any hay from the 6-acre tract in 1945. It is evident that any hay so taken was in their status as tenants under the Sherman lease. There is no evidence that they obtained the hay under any claim of ownership of the tract. There is some evidence that plaintiffs Purdum took some hay off of the disputed tract in 1949. The defendants Ball knew nothing of it. Plaintiff Kenneth L. Purdum talked with Balls' hired man who told him to take what he thought was his. He does not appear to have claimed the hay as owner of the land. It appears also that the statutory period of 10 years had run at the time of this incident. The plaintiffs contend, as they did in defending the claim of the defendant Sherman, that the defendants Ball did not know where the true boundary line was and that they actually claimed nothing more than to the true boundary. It is clear, however, that they used and occupied the land up to the west fence of the right-of-way under the belief that it was the boundary line. This is sufficient to establish adverse possession where such possession has been actual, open, exclusive, and continuous for a period of more than 10 years. The authorities cited in support of the Sherman claim also

support the claim of adverse possession of the defendants Ball. We point out that the defendants claim no land east of the railroad right-of-way, including any that might be within the southwest quarter of the northwest quarter of Section 31.

We think the evidence clearly shows on a trial de novo that the defendant Sherman is the owner of all of the north half of the southwest quarter of Section 31 lying west of the west fence on the Chicago, Burlington & Quincy Railroad right-of-way. Also, that the defendants Ball are the owners of all of the south half of the northwest quarter of Section 31 lying west of the west fence on the Chicago, Burlington & Quincy Railroad right-of-way. The judgment of the district court is therefore reversed and the cause remanded with directions to enter a decree quieting title in the defendants Sherman and Ball to the lands claimed by them in accordance with the prayers of their respective answers.

REVERSED AND REMANDED WITH DIRECTIONS.