NEBRASKA STATE BANK, A CORPORATION, APPELLEE, V.
MARVEL L. GADDIS, APPELLANT.

302 N.W.2d 686

Filed February 27, 1981. No. 42994.

Smith, Smith & Boyd for appellant.

Leamer Law Office for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

Plaintiff's petition sought to quiet title to a 20-foot strip of land in or adjacent to South Sioux City, Nebraska. The defendant, by cross-petition, claimed title by adverse possession. The District Court, after trial, entered judgment quieting title to the land in the plaintiff. Defendant has appealed.

In 1955 defendant, Marvel L. Gaddis, and her husband purchased a residential property located on the north side of East 39th Street on the edge of South Sioux City, Nebraska. The property was conveyed by a metes and bounds description which conveyed a rectangular tract 295 feet north and south by 73 feet 8 inches east and west. The property to the east of the disputed strip was cultivated farmland. The disputed tract of land is a 20- x 295-foot strip of land located immediately east of the land described in defendant's deed.

At the time defendant and her husband purchased the property, they did not have it surveyed. On the south portion of the property there was a house facing East 39th Street surrounded by a yard with bushes and trees. At the north edge of the backyard a fence running east and west divided the north and south portions of the property. A gate at the east end of the fence was located on the disputed tract. A wire fence fastened to the trees and some iron posts ran from the east end of the gate to somewhere near the northeast corner of the disputed tract. There was also a snow fence which ran along the north boundary of the property. The area enclosed by the wire fence was used for horses. On the north portion of the property there was a horse barn, a flower garden, and some trees, referred to as an orchard, all of which were located partially on the Gaddis land and partially on the disputed strip. There was also a rock or refuse pile located on the disputed strip.

Near the east edge of the disputed strip there was a dropoff in level down to the farmland to the east. There was no fence, but the crop line of the farmland formed a boundary line between the two properties. The land was cultivated each year and the crop line did not vary over the years. None of the disputed strip was cultivated by the persons who farmed the cropland.

The defendant and her husband assumed that their property extended to the cropland to the east. The disputed tract was always maintained and used as an integral part of the Gaddis property. The lawn was mowed down over the dropoff, weeds were cut, and trees were trimmed and removed. No one except the defendant and her husband has used or had possession of the disputed strip since 1955.

In 1958 or 1959 the defendant and her husband placed a septic tank on the disputed strip in the area east of the house. The owner of the land to the east raised some question as to whether the tank encroached upon his property, but it was installed anyway without further action or protest and used and maintained continuously for more than 10 years thereafter. When the defendant and her husband separated in 1973 the horse barn and the wire fence on the north portion of the property were removed.

In 1972 Town and Country Realty Company acquired title to the agricultural land to the east of the Gaddis property. Sometime shortly after Town and Country Realty acquired that land the telephone company became interested in purchasing a portion of the agricultural area and had a survey made which revealed that the 20-foot strip involved here was occupied by the defendant. As a result, the telephone company purchased the agricultural real estate to the east of the Gaddis property except for the disputed 20-foot strip. In November 1977 Town and Country Realty Company conveyed the disputed 20-foot strip to the plaintiff by quitclaim deed for $200. Town and Country never had or claimed possession of the disputed tract.

In 1974 the defendant and her husband were divorced. The decree assigned the residential property to the defendant and the description in the decree was the same as the description contained in the 1955 deed to the defendant and her husband. Thereafter, the State of Nebraska, in a condemnation proceeding necessitated by the widening of 39th Street, acquired a few feet of land from the owners of the property along the north side of East 39th Street. The defendant received payment for the 73 feet 8 inches shown on her deed and Town and Country Realty received payment for the few feet on the south end of the disputed strip. Neither the defendant nor her husband has ever paid taxes on the disputed strip.

The District Court found that defendant's estranged husband testified that he never intended to occupy more land than was purchased in 1955; that no open claim was made to the disputed tract by the defendant prior to the plaintiff's contractor entering upon the property in 1978; and that the record was devoid of any evidence tending to prove that the defendant at any time since 1955 possessed the disputed tract adversely, exclusively, notoriously, or actually. The District Court entered judgment against the defendant on defendant's cross-petition and quieted title to the disputed strip in the plaintiff.

It is well settled in this state that one who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. *Layher v. Dove*, 207 Neb. 736, 301 N.W.2d 90 (1981).

The plaintiff contends, and the trial court found, that the defendant's possession of the property involved here was not adverse because defendant and her husband conceded that they did not intend to claim more property than they had purchased. Plaintiff argues that their possession was therefore not under claim of ownership.

This case is a classic case of a mistaken boundary line. This court has consistently held that a claim of adverse possession is founded upon the intent with which the occupant had held possession and that this intent is ordinarily determined by what he has done in respect thereto. In *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957), we said: "The fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is not a controlling factor. It is the intent with which possession is held rather than an intention to hold in accordance with his deed that is controlling. . . . '[T]he possession is the important element, and it is held that such possession is not the less adverse because the person takes possession of the land in question innocently and through mistake. In other words, it is the visible and adverse possession, with an intention to possess land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor.'" *Id.* at 893-94, 81 N.W.2d at 334-35.

In an adverse possession case, intent may be either actual or implied or inferred from the circumstances. In most cases it is inferred from the circumstances. Actual assertion of claim of ownership is not necessary. *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979).

In *Pettis v. Lozier*, 205 Neb. 802, 290 N.W.2d 215 (1980), this court held that adverse possession is founded upon the intent with which the occupant held possession and can best be determined by his acts. We said: "'It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession. When, therefore, a claimant occupies the land of another by actual, open, exclusive, and continuous possession, the owner is placed on notice that his ownership is endangered and unless he takes proper action within 10 years to protect himself, he is barred from action there-

after and the title of the claimant is complete.'" *Id.* at 805, 290 N.W.2d at 217.

The record in the case now before us establishes that the defendant and her husband appropriated and used the disputed strip as their own, to the exclusion of all others. Their acts establish their intent and a claim of ownership which was adverse to the plaintiff. Adverse possession does not depend upon the remote motivations or purposes of the occupant nor upon whether his motivation is guilty or innocent. The evidence is uncontradicted that no one ever interfered with defendant's open, exclusive, and continuous possession and use of the disputed strip from 1955 until the plaintiff's contractor attempted to enter on the property in 1978.

The law requires this court in determining an appeal in an equity action involving questions of fact to reach an independent conclusion without reference to the findings of the District Court. In determining the weight of the evidence where there is an irreconcilable conflict on material issues of fact, this court will consider the fact that the trial court observed the witnesses and their manner of testifying. *Svoboda v. Johnson, supra.* In the case at bar, the evidence is essentially uncontradicted and is not in conflict on any material issue.

In our view the evidence established that the defendant was in actual, continuous, exclusive, notorious, and adverse possession of the disputed strip under a claim of ownership for a full period of 10 years. The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment for the defendant on her cross-petition.

REVERSED AND REMANDED WITH DIRECTIONS.