GLENN A. PETTIS, APPELLANT, V. CORLEE A. LOZIER,
APPELLEE.

349 N.W.2d 372

Filed May 4, 1984. No. 83-482.

Richard L. Swenson, for appellant.

John E. Hubbard of Kutak Rock & Huie, for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

McCOWN, J., Retired.

Plaintiff brought this action to quiet title to a tract of suburban land located in Douglas County, Nebraska. The land was owned of record by defendant. Plaintiff's action is based upon a claim of adverse possession. The district court found that plaintiff had failed to prove actual, open, continuous, exclusive, and notorious possession under a claim of ownership for the statutory period of 10 years. The district court quieted title in the defendant, and the plaintiff has appealed.

This is the second appearance of this case in this court. In the first case the district court sustained

a motion for summary judgment for the defendant on the ground that as a matter of law plaintiff could not acquire title to the property by adverse possession "because he knew the property was not his." On appeal this court held that "claim of right" or "claim of ownership" means "hostile," and these terms describe the same element of adverse possession, and that it was the nature of the possession rather than the intent of the possessor which constituted the warning.

This court held that the moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact and where, under the facts, the moving party is entitled to judgment as a matter of law. Since there were material disputed facts, the case was reversed and remanded for trial, and the present appeal reflects that trial.

The land involved here is a wooded, suburban tract of approximately 8 acres located a short distance from Omaha, Douglas County, Nebraska. It was purchased by the defendant and her husband in 1963 as a future building site for their home. They changed their plans to build on the tract, but kept the lot as an investment and as a possible future building site. Plaintiff purchased his tract of approximately 5 acres, located immediately to the east of defendant's land, in 1966. The grantor of both plaintiff's and defendant's lands is the same individual, and the grantor retained the tract immediately east of the plaintiff's tract. The north and south boundaries of plaintiff's and defendant's lands are on the same line, and the division line between plaintiff's land on the east and defendant's land to the west is approximately 650 feet from north to south. A highway designated "Calhoun Road" runs north and south along the west side of the defendant's tract. There was a fence along Calhoun Road and a fence along the north and south bounda-

ries of the tracts, but there was no fence on the boundary line between the two tracts.

At the time plaintiff purchased his tract of land in 1966, his grantor showed him the rough boundaries between plaintiff's land and defendant's land and told him that a person named Lozier owned the tract involved here. Plaintiff made no investigation as to the ownership of the land until 1973 or 1974 when he checked the tax records of the county and learned that the defendant owned the property and the taxes were paid. The taxes were paid by the defendant throughout the entire period involved here.

At the time plaintiff purchased his tract in 1966, there was a house, a shed, and a barn on the south portion of plaintiff's tract. Plaintiff has occupied the tract as his residence ever since his purchase. There was also a house and outbuildings on the tract immediately to the east which was occupied. There were no buildings on defendant's tract, and the defendant lived elsewhere.

Plaintiff's residence and the residence to the east had access to a north-south road farther east, known as Old Post Road, by means of a road running along the south boundary of plaintiff's tract of land and the tract to the east. The only direct access to defendant's tract of land was by way of Calhoun Road on the west.

The plaintiff testified that on August 14, 1967, he set out to acquire title to defendant's tract of land by adverse possession, and announced his intention to his then wife.

Plaintiff testified that he began grazing six or eight goats on defendant's property in 1966. He continued to keep the goats and grazed them on both properties until 1976, although he testified that they were kept on the disputed property most of the time. Plaintiff testified also that eight sheep were kept exclusively on the disputed property during the year 1975; a few geese were kept on the defendant's property from spring to fall of 1976; and two ponies were

kept a majority of the time on the disputed land from approximately 1972 to 1978, although they were housed in plaintiff's barn.

Plaintiff testified that he planted some brome-grass twice between 1966 and 1972 on some area of pastureland, although he admitted that bromegrass grew wild in the area and generally reseeded itself. He planted 25 pine trees in the early 1970s, all of which died. He also testified that for at least 2 or 3 years watermelon, squash, and/or rhubarb patches were planted in inconspicuous areas to avoid theft by trespassers.

The only "improvement" which plaintiff testified he placed on the disputed land consisted of three, large, movable packing crates which were kept on the disputed land for approximately 3 years, and used some of the time as sheds for animals. They were hauled on and off with a tractor. A watering tank was put out in 1975, and a beehive was set out for 3 or 4 years during the 1970s.

Plaintiff also testified that junk cars were placed in inconspicuous areas on the property. Sometimes they were on the plaintiff's land and sometimes on the disputed land. Generally, they were located near the boundary line between the tracts and con-cealed in wooded areas. Plaintiff also testified that he put trash and junk in a gully on the west side of the disputed land near Calhoun Road in the early 1970s for the purpose of stopping erosion.

Plaintiff testified that at some unspecified time he posted and later maintained "No Hunting" and "No Trespassing" signs on the disputed tract. He testi-fied that on two occasions he removed "For Sale" signs from the land, and once told an inquiring prospective purchaser that the land was his.

Plaintiff testified that he kept the border fences in repair around the disputed land from 1967 on, appar-ently to keep his livestock from getting out. He in-stalled a section of barbed wire fence in a wooded area at the northeast corner of the property in 1971,

and testified that he also installed some other fence somewhere in the interior of the disputed tract in 1975. Plaintiff also testified that he and his family used the land for recreational purposes from time to time, including sledding, target practice, and riding ponies.

The defendant's husband testified that the tract was purchased as a homesite and that although they changed their plans, they kept the land and wished to maintain it in a wild state as a good house site for the future. He testified that he inspected the defendant's land approximately every 2 to 3 years after it had been purchased. His visits of inspection were always in the wintertime when there was no snow on the ground and it was easier to walk through the underbrush. He testified that he never saw any animals grazing on the land and that the fences, which were not in very good condition, always looked the same. He testified that beginning in the early 1970s, he noticed junk cars near the southeast corner of defendant's property in an area near the boundary line between plaintiff's and defendant's properties, although he was not certain the cars were on defendant's land or plaintiff's land. He decided that if they were on defendant's property, it would be easy enough to bulldoze them off in the event they decided to build on the property. He testified that he had the impression that plaintiff had horses and was occasionally using the disputed land for one purpose or another, but felt there had been no damage or devaluation of the land, and he never had any idea that plaintiff was claiming ownership.

Defendant's husband testified that he either did not see the "No Hunting" and "No Trespassing" signs or, if he did, assumed they had been there before, and agreed with the idea. He also testified that the defendant had twice listed the property for sale in the early 1970s and that the realtor reported that he had showed the property at least once but had not sold it. The realtor did not report to de-

fendant any difficulty getting on the property or any difficulty with signs.

The district court found that the actions of the plaintiff did not meet the requirements of adverse possession nor constitute a warning to the titleholder that plaintiff was claiming ownership, and held that the plaintiff had failed to prove an open, hostile, notorious, exclusive, and continuous possession of the property for the statutory period of time.

The district court quieted title in the defendant, and this appeal followed.

In essence, the plaintiff argues on appeal that because he intended to acquire title by adverse possession against a known owner, therefore all of his acts of possession should be deemed to have been an unequivocal warning of his intention to claim title and that anyone should have realized the purpose because of the intention.

When a claimant occupies the land of another by actual, open, exclusive, and continuous possession, the owner is placed on notice that his ownership is in danger and that unless he takes proper action within 10 years to protect himself, he may lose his title to the claimant. It is well settled in this state that one who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, open, continuous, exclusive, notorious, and adverse possession under a claim of ownership for a full period of 10 years. *Berglund v. Sisler*, 210 Neb. 258, 313 N.W.2d 679 (1981); *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981).

It has been stated repeatedly by this court that the real purpose of prescribing the manner in which adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may within the period of limitations take action to protect his interest. As this court has said, ''It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession.'' *Purdum v.*

*Sherman*, 163 Neb. 889, 895, 81 N.W.2d 331, 335 (1957).

The fact that a claimant testifies that he intended to acquire his neighbor's land by adverse possession does not transform every minor trespass into proof of hostile possession under a claim of ownership. Neither does it alter the essential requirements of adverse possession nor lessen the burden of proof resting on the claimant.

The plaintiff argues that the grazing of a few head of livestock on various unspecified portions of the disputed tract was an open and obvious warning to defendant that plaintiff was claiming ownership of all of defendant's land, even though most of the tract was wooded and not grazing land. In addition, the grazing land on the disputed tract was completely surrounded by woods except on the unfenced boundary between defendant's and plaintiff's lands. Except from plaintiff's land to the east, it would have been difficult for anyone to see animals on the disputed tract without going onto the tract itself.

Even if grazing had been open and obvious to anyone, there is no evidence to support the conclusion that a landowner who permits his livestock to graze on the unused land of his neighbor across an unfenced boundary line is giving a clear and unequivocal warning to the neighbor that the owner of the livestock is claiming ownership of all the neighbor's land. By the same sort of reasoning plaintiff asks us to assume that a person who occasionally repairs his neighbor's fence is giving notice that he is claiming ownership of all the land inside the fence rather than preventing his own livestock from escaping or performing a neighborly favor.

Plaintiff also wishes to treat his dumping of junk and trash in a gully near the highway for the stated purpose of stopping erosion as an act constituting notice of a claim of ownership of all the real estate. It would be much more reasonable to assume that it showed an intent to abandon personal property rather than an intent to claim ownership of the real

estate on which the personal property was abandoned.

Although the plaintiff testified that he often ordered kids off the land over the 10-year period, there is nevertheless the evidence that defendant's agents or invitees were also on the premises on various occasions, but apparently the parties or their agents or representatives did not meet on the premises at any time prior to 1978. In 1978 the defendant sent surveyors onto the land to survey the boundary line between defendant's and plaintiff's lands when her son-in-law was planning to build a house on the disputed tract. The plaintiff ejected them and filed this suit on September 1, 1978.

The district court specifically found that the planting of melons and garden and placing of personal property on the disputed tract were done in inconspicuous areas or were not on the property for the required time. Evidence of cutting and stacking of dead timber was without evidence of extent, duration, or exact location. The court found that plaintiff had failed to prove actual, open, continuous, exclusive, and notorious possession for the full period of 10 years and quieted title in the defendant.

An action to quiet title is an equitable action, and it is the duty of this court to try the issues of fact de novo on the record and to reach an independent conclusion thereon without reference to the findings of the district court. *Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981).

A review of the entire record establishes that plaintiff failed to meet his burden of proving actual, open, continuous, exclusive, notorious, and adverse possession under claim of ownership for the full period of 10 years.

The decree of the district court was correct and is affirmed.

AFFIRMED.