ALBERT SIMACEK ET AL., APPELLANTS, V. YORK COUNTY RURAL
PUBLIC POWER DISTRICT, APPELLEE.

370 N.W.2d 709

Filed July 19, 1985.   No. 84-207.

Daniel E. Bryan of Heinisch & Bryan Law Office, for
appellants.

Gordon B. Fillman of Fillman & Brugh, and John R. Brogan
of Brogan & McCluskey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The plaintiffs, Albert Simacek, Patty Simacek, and Blanche
J. Simacek, are the owners of a quarter section of farmland in
Fillmore County, Nebraska. In 1887 Hiram L. Smith, a
predecessor in title, conveyed to the Fremont, Elkhorn and
Missouri Valley Railroad Company "for the purpose of
constructing a Railroad thereon, and for all uses and purposes
connected with the construction and use of said Railroad, a
strip of land One Hundred feet in width" over and across the
land owned by the plaintiffs. The deed provided that in the
event the railroad right-of-way was abandoned, it would revert
to the grantor, his heirs or assigns.

On April 27, 1967, the Chicago and North Western Railway
Company, successor to the Fremont, Elkhorn and Missouri

Valley Railroad Company, issued a written license to the defendant, York County Rural Public Power District, to construct, maintain, and use an electric power transmission line along the right-of-way. The defendant constructed a powerline on the railroad right-of-way in 1967, which is a part of the transmission system of the defendant. The defendant did not obtain the consent of the plaintiffs to construct and operate the line, and the plaintiffs made no protest or objection to such construction and commenced no litigation concerning the line until this lawsuit was filed.

Subsequently, the Chicago and North Western Railway Company conveyed the right-of-way to the Great Plains Railway Company, which abandoned the right-of-way and removed its trackage in May 1976. The defendant has continued to maintain and operate the powerline.

On March 2, 1983, the plaintiffs commenced this action for a declaratory judgment as to the parties' rights with respect to the property, to recover possession of the property, and for an injunction to compel the defendant to remove its transmission line and poles from the property. The defendant cross-petitioned, claiming a prescriptive easement. The trial court found generally for the defendant. The plaintiffs have appealed.

This being an equitable action, we review the record de novo and reach an independent conclusion without reference to the findings of the trial court. *Steinfeldt v. Klusmire*, 218 Neb. 736, 359 N.W.2d 81 (1984).

The issue before the court is whether the defendant acquired a prescriptive easement to maintain the powerline on plaintiffs' property.

The law treats a claim of prescriptive right with disfavor, and, accordingly, such a claim requires that the elements of such adverse user be clearly, convincingly, and satisfactorily established. *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984); *Gerberding v. Schnakenberg*, 216 Neb. 200, 343 N.W.2d 62 (1984). A party claiming a prescriptive easement must show that his user was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. In order for the

defendant to succeed in its claim, the necessary elements must have been clearly, convincingly, and satisfactorily established since March of 1973. The record shows this was not accomplished.

It is well established that a permissive use is not adverse and cannot ripen into an easement. *Fischer v. Grinsbergs*, 198 Neb. 329, 252 N.W.2d 619 (1977). The general rule is that if a use begins as a permissive one, it retains that character until notice that the use is claimed as a matter of right is communicated to the owner of the servient estate. *Gerberding, supra.*

In *Svoboda v. Johnson*, 204 Neb. 57, 64-65, 281 N.W.2d 892, 898 (1979), it was explained:

> The fourth element required to prove a prescriptive easement is that the claimant's use was under a *claim of right*, such that there is no recognition of the right of the owner of the servient tenement to stop the use. In Barnes v. Milligan, 196 Neb. 50, 241 N.W.2d 508 (1976), we quoted from 3 Am. Jur. 2d, Adverse Possession, § 96, p. 177, with reference to the meaning of "claim of right," as follows: " 'Terms such as "claim of right," "claim of title," and "claim of ownership," when used in this connection, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right. * * * Thus, "claim of right" means no more than "hostile" and if possession is hostile it is "under a claim of right." ' "

See, also, *Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981).

The record shows that the defendant went into possession with the permission of the railroad company, which had the right to possession of the right-of-way, and did not maintain or use its electric transmission line under a claim of right prior to the railroad's abandonment of the right-of-way. In its answer and cross-petition the defendant alleged:

> That said defendant constructed an electric transmission line in 1967 along and upon approximately seven miles of railroad right of way including the railroad right of way across the Northeast Quarter (NE$^1$/4) of Section 20, Township 7 North, Range 2 West, in Fillmore

County, Nebraska, after first complying with all provisions of Nebraska law, and after entering into an agreement with the Chicago and North Western Railway Company dated April 27, 1967, which authorized the defendant to construct and maintain an electric transmission line upon said railroad right of way . . . .

That the defendant in constructing said electric transmission line relied upon the representations of the Chicago and Northwestern [sic] Railway Co. that it had full legal authority to permit the defendant to construct said electric transmission line; the defendant paid the sum of $10,000.00 to the said Chicago and Northwestern [sic] Railway Co. as consideration for its granting authority and permission to construct and maintain the electric transmission line upon the railroad right of way.

The defendant's use of the property was permissive and not under a claim of right until at least May 1976, when the railroad abandoned the right-of-way.

The defendant argues that the railroad could not grant permission for the construction, maintenance, and use of an electric transmission line upon the right-of-way because such use was not consistent with its easement. Therefore, the defendant concludes, its use of the right-of-way was adverse to the plaintiffs from its inception. The argument ignores the fact that from April of 1967 to May of 1976 the defendant made no claim other than it was upon the right-of-way with permission. As has been stated repeatedly by this court,

the real purpose of prescribing the manner in which adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may within the period of limitations take action to protect his interest. . . . *Purdum v. Sherman*, 163 Neb. 889, 895, 81 N.W.2d 331, 335 (1957).

*Pettis v. Lozier*, 217 Neb. 191, 196-97, 349 N.W.2d 372, 375-76 (1984).

The record demonstrates that the defendant's possession was held out to be by permission of the railroad, which owned the right-of-way over the land. The statute did not begin to run until the railroad abandoned the right-of-way and the

defendant's license expired. Since this suit was brought within 10 years, the defendant did not acquire an easement by prescription.

This case is similar to *State ex rel. Highway Comm. v. Union Elec. Co.*, 347 Mo. 690, 148 S.W.2d 503 (1941). In *Union Elec.* a railroad had a right-of-way over certain property. Describing the nature of this grant, the court said: " 'A right of way, in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others.' " *Id.* at 697, 148 S.W.2d at 506. The power company *in that case* made application to the railroad for permission to place a transmission line on the right-of-way, which permission was granted *by the railroad.*

Answering the power company's contention that it had held the property adversely to the reversioners for the requisite period of time, the court said:

> It is quite clear, we think, that from 1916 to January 18, 1932, when the right of way land here involved was abandoned by the railroad company, defendant's occupancy, at most, was only *permissive* and not *adverse*, and such character of occupancy, however long, will not ripen into a prescriptive easement.

347 Mo. at 698-99, 148 S.W.2d at 507. See, also, *Franke v. Southwestern Bell Telephone Company*, 479 S.W.2d 472 (Mo. 1972), *cert. denied* 409 U.S. 875, 93 S. Ct. 124, 34 L. Ed. 2d 128 (citing and explaining *Union Elec.*).

In *Taylor Investment Co. v. Kansas City Power & Light Co.*, 182 Kan. 511, 521, 322 P.2d 817, 825-26 (1958), the court said:

> On the state of facts here presented we are compelled to hold as a matter of law that the "Transmission Company" was not asserting an adverse claim hostile to the plaintiff or its predecessors in title, but used and occupied the right of way for its transmission line in complete subservience to the exclusive right of the "Railway Company" prior to the abandonment of the railroad. The "Railway Company" reserved the right to demand that the "Transmission Company" at its own expense make such changes in its poles and wire as the railway business required.

We have not overlooked *W. U. Telegraph Co. v. Rich*,

supra, in which this court recognized the possibility of an additional burden on the fee title where a railroad company and a telegraph company jointly constructed a telegraph line on the railroad right of way. It was held that the portion of the business transmitted over the wires by the telegraph company, over and above the railroad uses, gave rise to a new claim for damages caused by the additional burden, if any, cast upon the easement by its use of the telegraph line. We think the case distinguishable because in the instant case the issue is whether the "Transmission Company" was asserting an adverse claim hostile to the plaintiff or its predecessors in title. We think it inconsistent to use and occupy an easement for a transmission line subservient to a railroad having the exclusive use and possession of a right of way and at the same time contend that the use of such line for non-railway purposes was adverse and hostile as to those having a reversionary interest. And this is true whether the railroad held its right of way as a fee simple determinable title or as an easement.

In view of the present state of the record, we determine only that the defendant did not acquire an easement across the plaintiffs' land by prescription.

The judgment of the district court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. To begin with, I do not believe that an easement such as that given to the Fremont, Elkhorn and Missouri Valley Railroad Company, see *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982), was sufficient or broad enough to authorize the railroad or its successors to grant to York County Rural Public Power District (York PPD) authority to build a high-voltage electric transmission line along the right-of-way. In *Muncie Electric Light Co. v. Joliff*, 59 Ind. App. 349, 109 N.E. 433 (1915), the Indiana court held that

where a railroad company owned only an easement, it could not license third persons to construct other lines on its right-of-way, and persons attempting to do so were merely trespassing.

Further, in *Potomac Edison Co. v. Routzahn*, 192 Md. 449, 65 A.2d 580 (1949), a case very similar to the case at bar was presented to the Maryland court. The owners of certain land argued that the construction of powerlines along a railroad right-of-way by the power company was permissive and therefore could not ripen into adverse possession. In reversing the trial court and in finding that the electric company had acquired a right by adverse possession, the court said at 462, 65 A.2d at 585-86:

> The question is whether or not the power lines were erected with a view to be used by the railway company in the future in its business as a railway or whether such construction was solely for the use of a power company in the pursuit of a different business from railway business and for the profit of both companies. If the power lines were constructed with the latter motive they were not within the grant of the right of way, but if for the former reason they were and no additional servitude was imposed on the land.

The court then concluded that the use of the right-of-way for high-tension transmission lines was not within the grant by deed or merely incidental thereto, and therefore was an open, uninterrupted, adverse use for more than the statutorily prescribed time.

The evidence in this case, limited as it is, makes it clear to me that the construction of the electric power transmission line along the right-of-way was in no manner for the benefit of the Chicago and North Western Railway Company, successor to the Fremont, Elkhorn and Missouri Valley Railroad Company, but, rather, was for the purpose of transmitting electricity for and on behalf of York PPD. On that basis the railroad was without authority to grant permission to York PPD to construct the powerline, no matter what either party thought to the contrary.

I have difficulty understanding how, if the railroad had no authority to grant permission to the power district in the first

place, York PPD's entry upon the right-of-way could be permissive. It seems clear to me that had the owner of the land sought to eject York PPD from the right-of-way at any time before York PPD's presence ripened into a prescriptive right, the owner would have been successful. The fact that a trespasser pays rent to one without authority to subject the land to a burden does not give the trespasser authority to remain on the land, no matter what the trespasser may honestly believe. Nor does the fact that one may believe it has a right to be on property constitute permission of the type to defeat adverse possession. Persons who claim adverse possession generally believe that they have a right in the property, only later to discover they are in error.

When we talk about intent to possess, we do not, I believe, mean in the sense that the possessor must know that his presence is unlawful and for a time precarious but, rather, that he does indeed intend to possess the land and not just unconsciously and quietly wander about.

In *Barnes v. Milligan*, 196 Neb. 50, 54, 241 N.W.2d 508, 511 (1976), quoting from *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957), we said:

"Adverse possession is founded upon the intent with which the occupant has held possession and this intent can best be determined by his acts in relation thereto. * * * The real purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may within the period of limitation take action to protect his interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession. . . ."

Recognizing that everyone is presumed to know the law, we must likewise recognize that the owner of this land is presumed to know that the railroad company did not have authority to grant permission to the power company and, therefore, could not permit the power company to enter the land permissively. It is hard to imagine what could be more open, adverse, and notorious, and therefore sufficient to give notice to the real owner, than a high-power transmission line strung along high

rise towers. Whatever York PPD may like to think, it was a trespasser from the very moment it entered upon the land because it was dealing with an entity that had no authority to grant permission to it. The fact that it paid the railroad a fee is irrelevant. As we pointed out in *Nebraska State Bank v. Gaddis*, 208 Neb. 136, 140, 302 N.W.2d 686, 689 (1981):

"The fact that one claiming title by adverse possession never intended to claim more land than is called for in his deed is not a controlling factor. It is the intent with which possession is held rather than an intention to hold in accordance with his deed that is controlling. . . . '. . . In other words, it is the visible and adverse possession, with an intention to possess land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor.' "

In the instant case, York PPD believed it had a right to construct its line along the railroad right-of-way. In truth and in fact, it did not have that right; and therefore if it exercised that right for more than 10 years, it acquired an easement by adverse possession.

I believe that the district court was correct, and I would have affirmed its decision.

CAPORALE, J., joins in this dissent.