LAKE ARROWHEAD, INC., APPELLANT, V.
TONY JOLLIFFE, APPELLEE.
639 N.W.2d 905

Filed March 8, 2002.   No. S-00-966.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Mark L. Laughlin and Robert F. Peterson, of Laughlin, Peterson & Lang, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

At issue in this declaratory judgment case is access to an 11.5-acre parcel of land owned by appellee, Tony Jolliffe. The parcel is adjacent to but located outside Lakeland Estates, a gated residential housing subdivision in Blair, Nebraska. Appellant, Lake Arrowhead, Inc., owns and maintains the lake and roads within Lakeland Estates. Due to the existence of a creek along portions of its borders, the parcel can be accessed only from either Summit Drive in Lakeland Estates or Lot 4, Block 32 (Lot 4), in Lakeland Estates, which lot is owned by Jolliffe.

At trial, Lake Arrowhead claimed that (1) Jolliffe did not possess a prescriptive easement onto the parcel via the private road system of Lakeland Estates in general and via Summit Drive in particular and (2) access to the parcel via Lot 4 was in violation of the restrictive covenants of Lakeland Estates. Lake Arrowhead sought declaratory and injunctive relief. For his counterclaim and at trial, Jolliffe claimed that (1) he possessed a prescriptive easement over certain roadways located within Lakeland Estates from which he could properly access the parcel and (2) he did not breach the restrictive covenants of Lakeland Estates by accessing the parcel from Lot 4.

The district court for Washington County entered an order in which it concluded that Jolliffe possessed a permanent prescriptive easement over certain roadways located within Lakeland Estates from which Jolliffe could properly access the parcel and that access to the parcel from Lot 4 by Jolliffe did not breach the restrictive covenants of Lakeland Estates. Lake Arrowhead appeals.

Because Jolliffe failed to establish the element of adverse use, the district court erred in concluding that Jolliffe possessed a prescriptive easement, and we reverse that portion of the district court's order. Because the covenants are not breached by Jolliffe's use of Lot 4 to access the parcel, we affirm that portion of the district court's order.

## II. STATEMENT OF FACTS

Lakeland Estates is a gated, residential housing subdivision developed around and surrounding a lake located in Blair, Washington County, Nebraska. Lakeland Estates was platted in the 1970's on farmland purchased from Jim Foley and his brother. Lake Arrowhead is a nonprofit organization consisting of members who own real estate in Lakeland Estates. Lake Arrowhead owns and maintains the lake and the road system within Lakeland Estates.

"Amended and Substituted Protective Covenants," recorded in August 1992, govern the use of lots within Lakeland Estates. Paragraph 1 of the restrictive covenants provides, inter alia, that "[a]ll lots shall be used as residential lots except Lot 1, Block 14, which may be used for commercial use." The covenants do not require that lot owners develop the lots.

In June 2000, the subdivision contained approximately 630 platted lots. The first home was constructed in approximately 1972. There are approximately 250 homes in Lakeland Estates. Some Lakeland Estates property owners own more than one adjoining lot. Many of these owners build their homes on one lot and use the additional lots for other purposes consistent with residential use, including the storage of boats and vehicles.

Jolliffe owns a residence on two adjoining lots in Lakeland Estates, where, at the time of trial, he had lived for approximately 11 years. This residence and these lots are not at issue in this case. In the summer of 1998, Jolliffe bought a separate third lot in the southeastern corner of the subdivision, Lot 4, located at the corner of East Street and Summit Drive in Lakeland Estates. Lot 4 is undeveloped, and its use to access the parcel in question is one of the issues in this case.

In 1999, Jolliffe purchased the approximately 11.5-acre parcel, to which access is the subject of this litigation. The parcel is not part of Lakeland Estates but is adjacent to the southeast portion of the subdivision. At issue in this appeal is Jolliffe's ability to access the parcel through Lakeland Estates, either from Summit Drive or from Lot 4, both of which are located in Lakeland Estates and both of which border the parcel to the north.

The parcel was originally part of a 110-acre tract of farmland. According to trial testimony, in the 1950's, the parcel became

separated from the remainder of the 110-acre tract when the banks of the creek bordering portions of the parcel eroded, widening and deepening the creek. The inaccessible borders of the parcel are currently bounded by a heavily vegetated creek approximately 20 to 30 feet deep and 60 to 100 feet wide. As a result of the changes to the creek, access to the parcel is limited to where it adjoins the southeast border of Lakeland Estates.

John Ehlers purchased the 110-acre tract containing the parcel in question in 1941 or 1942. Foley and his brother owned the farmland which was platted as Lakeland Estates in the 1970's. Foley testified that after the creek widened in the 1950's, the parcel became isolated, and that thereafter, Ehlers accessed the parcel by traveling across the Foleys' farmland where it bordered the northern edge of the parcel. Foley testified that his family would leave 4 to 8 rows of their property uncultivated to allow Ehlers to access the parcel. When asked at trial whether there was "any talk about blocking [Ehlers'] access to the parcel," Foley testified, "No, no, you didn't do that to a neighbor."

In 1977, the entire 110-acre tract including the parcel was sold to William Mammel. Mammel continued to use the parcel for agricultural purposes, and Mammel or someone working on his behalf used the same route Ehlers had used to access the parcel. When Mammel purchased the 110-acre tract including the parcel, the Foleys had sold their farmland and Lakeland Estates had been platted. Accordingly, in order to access the parcel, Mammel, or someone working for him, would drive the farm equipment along Lakeland Estates roads and access the parcel from Summit Drive, a Lakeland Estates road which abutted the northern border of the parcel. During his trial testimony, Mammel identified the route he would take through Lakeland Estates as being from "the east gate off . . . County Road 34 . . . [d]own Trout Street to the . . . end of Lakeshore Drive . . . [t]hen across the dam to the east end of South Lakeshore onto East Street and then [he] would access Summit and from Summit [he] would go onto the parcel." Mammel estimated that he or someone working for him would access the parcel along this same route somewhere from 10 to 40 times per year.

Mammel testified that Lakeland Estates gave him permission to use the subdivision's roads. When asked at trial whether he

had had "any specific discussion with anybody from Lakeland about this access, or did [he] just use it," Mammel responded, "if a gate was closed because it was the wrong time of year or something like that, there would be talk like that, you know, to open the gate." Mammel also testified that Lakeland Estates offered him a key to a gate on the subdivision, so that he could unlock the gate if he needed access to the parcel, "because it was an inconvenience to try to find somebody to unlock the gate."

In 1999, Mammel sold the parcel to Jolliffe. At trial, Jolliffe testified that he bought the parcel in order to construct a residence on the property and incidently to pasture horses and cultivate the land. On April 4, 1997, prior to his purchase of the parcel, Jolliffe attended a Lake Arrowhead board of directors meeting and sought an easement from Lake Arrowhead granting him access to the parcel from Summit Drive. The minutes from the April 4 meeting note Jolliffe's request and further state that "[i]f Tony continued to own a lot in Lakeland he would have automatic access to the [parcel]." However, on May 8, the board of directors voted to deny Jolliffe the requested easement.

Although he had been denied an easement from Lake Arrowhead's board of directors, in the spring of 1999, Jolliffe began to build a road from Summit Drive to the parcel to provide for access to the parcel. On May 4, 1999, the Lake Arrowhead board of directors sent Jolliffe a letter demanding that he stop work on the road and restore the Lake Arrowhead land to its original condition. The letter further stated that "[y]ou are the owner of Lot 4 in Block 32, which can be used for this purpose." After receiving the May 4 letter, Jolliffe accessed the parcel from Lot 4.

Lake Arrowhead filed this declaratory judgment action on November 16, 1999. In count I of its petition for declaratory judgment, Lake Arrowhead sought a declaration that Jolliffe's use of Lot 4 to access the parcel was in breach of paragraph 1 of the restrictive covenant requiring that " 'all lots shall be used as residential lots[.]' " In count II, Lake Arrowhead sought, inter alia, a declaration that Jolliffe did not have a prescriptive easement to use Lakeland Estates property to access the parcel. As part of its requested relief, Lake Arrowhead sought an injunction enjoining Jolliffe from using Lakeland Estates property and Lot 4 to access the parcel.

On December 20, 1999, Jolliffe filed his answer and counter-claim to Lake Arrowhead's petition. In his counterclaim, Jolliffe sought a determination that he had a prescriptive easement to access the parcel from Summit Drive in Lakeland Estates and further finding that he had a right to access the parcel from Lot 4.

On June 13, 2000, the matter came on for trial before the district court. Eight witnesses testified, including Mammel, Foley, and Jolliffe. The parties stipulated to certain facts. A total of 58 exhibits were received into evidence. On August 17, the district court entered its order in favor of Jolliffe and against Lake Arrowhead. The district court concluded that Jolliffe had a permanent prescriptive easement to access the parcel through Lakeland Estates. Specifically, the district court defined the easement as follows:

> [T]he Court finds that [Jolliffe] has established that he . . . as an incident of ownership of the Parcel, is the owner of an easement for ingress to and egress from the Parcel to County Road 34 in Washington County, Nebraska, the nearest public roadway[,] which easement runs, over and across the roadway extending from the east entrance to Lakeland Estates down Trout Lane to the east end of North Lakeshore Drive across the dam to South Lakeshore Drive and from East Street to the Parcel.

The district court ordered that Jolliffe was entitled to use the easement "for purposes of ingress and egress to the Parcel" and enjoined Lake Arrowhead from restricting or blocking Jolliffe's use of the easement. The district court also concluded that Jolliffe's use of Lot 4 to access the parcel did not violate the restrictive covenants of Lakeland Estates.

Lake Arrowhead appeals from the district court's August 17, 2000, order.

### III. ASSIGNMENTS OF ERROR

On appeal, Lake Arrowhead has assigned four errors. Lake Arrowhead claims, restated, that the district court erred (1) in finding that Jolliffe had a permanent prescriptive easement across Lakeland Estates roadways for purposes of ingress and egress to the parcel, (2) in placing the burden on Lake Arrowhead to prove that Jolliffe's intended use of the parcel for

residential purposes would not be more burdensome to the servient estate than if used by farm equipment and trucks, (3) in determining the extent of the easement off Summit Drive awarded to Jolliffe, and (4) in finding that Jolliffe was entitled to use Lot 4 as a means of access to the parcel.

Our conclusion that the district court erred in determining that Jolliffe had proved the existence of a prescriptive easement resolves the first three assigned errors. The fourth assigned error is discussed separately.

## IV. STANDARDS OF REVIEW

An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). An action for injunction sounds in equity. *Id.*

In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996).

## V. ANALYSIS

### 1. PRESCRIPTIVE EASEMENTS

#### (a) Legal Principles Regarding Prescriptive Easements

In considering Lake Arrowhead's assignments of error challenging the district court's conclusion that Jolliffe was entitled to a prescriptive easement, we are guided by certain principles. We have noted that " ' "[t]he use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. . . ." ' " *Harders v. Odvody*, 261 Neb. 887, 894, 626 N.W.2d 568, 574 (2001) (quoting *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979)). A party claiming a prescriptive easement must show that his or her

use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. *Simacek v. York County Rural P.P. Dist.*, 220 Neb. 484, 370 N.W.2d 709 (1985). The law treats a claim of pre-scriptive right with disfavor, and, accordingly, such a claim requires that all the elements of such adverse use be clearly, con-vincingly, and satisfactorily established. *Id.*; *Svoboda, supra.* As for the element of adversity, this court has recognized that a per-missive use is not adverse and cannot ripen into an easement. *Simacek, supra.*

### (b) Jolliffe's Prescriptive Easement Claim

In his counterclaim and at trial, Jolliffe claimed a prescriptive easement over certain of Lakeland Estates' roads, and the dis-trict court agreed that Jolliffe was entitled to a prescriptive easement. On appeal, Jolliffe argues that the prescriptive ease-ment was established by virtue of "at least 30 years of use" of such roads by prior owners of the parcel and that such use enures to Jolliffe's benefit. Brief for appellee at 20. Jolliffe bears the burden of proving, by clear, convincing, and satisfactory evi-dence, each of the elements of his claimed prescriptive ease-ment. See, *Simacek, supra*; *Svoboda, supra.* A review of the record shows that the evidence fails to support the element of adverse use, and accordingly, Jolliffe failed to carry his burden of proving a prescriptive easement by clear, convincing, and sat-isfactory evidence.

Mammel acquired the parcel in 1977 and testified that he used Lakeland Estates roads to access the parcel from 10 to 40 times a year. However, Mammel testified that he was given per-mission by Lake Arrowhead to access the parcel by means of the subdivision's roads. When asked at trial whether "somebody from Lakeland Estates actually gave you permission to access the parcel using Lakeland roads," Mammel responded, "[t]hat's correct." Although Mammel further testified that he did not seek permission each time he accessed the parcel through Lakeland Estates, his failure to repeatedly request permission does not amount to adverse use. "[I]f the original use . . . is by permis-sion, it is presumed to so continue; continuance of a use which was originally permissive does not become hostile or adverse by

a mere lapse of time." 25 Am. Jur. 2d *Easements and Licenses* § 65 at 633 (1996).

It is undisputed that Lake Arrowhead erected a locked gate which blocked part of Mammel's route to the parcel and that Mammel was required to wait for a representative of the subdivision to unlock the gate and allow him access. Mammel's request for permission to access the parcel using Lakeland Estates roads and his acquiescence to Lake Arrowhead's use of a locked gate are inconsistent with Jolliffe's claim that Mammel's access to the parcel through Lakeland Estates was adverse. See 25 Am. Jur. 2d, *supra*, § 62 at 630 (defining adverse use as "trespassory use . . . without permission asked or given, disregarding entirely the rights of others").

Permissive use is not adverse. 25 Am. Jur. 2d, *supra*, § 65. See, also, *Simacek v. York County Rural P.P. Dist.*, 220 Neb. 484, 370 N.W.2d 709 (1985) (stating that defendant did not acquire prescriptive easement when use of land was by permission). " 'To prove a prescriptive right to an easement, *all* the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. . . .' " (Emphasis supplied.) *Svoboda v. Johnson*, 204 Neb. 57, 62, 281 N.W.2d 892, 897 (1979), quoting *Jurgensen v. Ainscow*, 155 Neb. 701, 53 N.W.2d 196 (1952). Under our de novo standard of review, see *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996), we determine that Jolliffe has failed to establish by clear, convincing, and satisfactory evidence that Mammel's use of Lakeland Estates roads was adverse and that consequently, Jolliffe's use based on that of Mammel cannot be deemed a prescriptive easement. Accordingly, we conclude the district court erred in granting Jolliffe a prescriptive easement, and we reverse that portion of the district court's order.

## 2. Restrictive Covenants

Lake Arrowhead assigns as error the district court's conclusion that Jolliffe's use of Lot 4 to access the parcel did not violate the restrictive covenants of Lakeland Estates. Lake Arrowhead argues that use of Lot 4 as a "thoroughfare" to the parcel upon which Jolliffe is building a residence is not a "[r]esidential use." Brief for appellant at 25. We conclude that there is

nothing in the language of the covenants restricting Jolliffe from using Lot 4 to access the parcel, and accordingly, we affirm that portion of the district court's order.

■ Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants. *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996). Lake Arrowhead argues that Jolliffe's use of Lot 4 to access the parcel is contrary to the terms of paragraph 1 of the restrictive covenants. Paragraph 1 provides that "[a]ll lots shall be used as residential lots except Lot 1, Block 14, which may be used for commercial use." Based on the language of paragraph 1, we reject Lake Arrowhead's argument that Jolliffe's access to the parcel from Lot 4 violated the covenants.

In *Reed v. Williamson*, 164 Neb. 99, 104, 82 N.W.2d 18, 22 (1957), this court construed the meaning of a restrictive covenant which provided that " '[n]o lot shall be used except for residential purposes.' " We determined that the quoted phrase prohibited the property from being used for a commercial purpose, namely the production of oil and gas. *Id.* In *Reed*, we cited with approval a Texas appellate court's decision which stated:

> "[T]he purpose of restricting lots in additions to cities to residential use is to establish an area free from commercial activity, and thereby enhance the value of such lots as residential property. The word 'residential' as used in a covenant restricting the use of property, is used in contradistinction to 'business' or 'commerce.' "

164 Neb. at 107, 82 N.W.2d at 23 (quoting *Briggs v. Hendricks*, 197 S.W.2d 511 (Tex. Civ. App. 1946)).

In the instant case, it is apparent that the purpose of paragraph 1 of the covenants was to restrict the use of Lakeland Estates lots to residential purposes as opposed to commercial development. Paragraph 1 of the covenants juxtaposes the two uses, "residential" and "commercial." Paragraph 1 restricts the use of all Lakeland Estates lots to residential uses, *except* Lot 1, Block 14, which the covenant specifically provides may be used for a commercial purpose. Furthermore, Lake Arrowhead representatives testified at trial that the restrictive covenants of Lakeland Estates do not require Lakeland Estates lot owners to construct residences on each lot they own or to develop the lots and that

many Lakeland Estates property owners who own more than one adjoining lot construct their homes on one lot and use the adjoining lot for purposes consistent with residential use, including access to their homes, with the apparent acquiescence of the Lake Arrowhead board of directors.

The record reflects that the Lake Arrowhead board of directors twice advised Jolliffe that he could use Lot 4 to access the parcel. In April 1997, when Jolliffe attended a board of directors meeting to request an easement from Lake Arrowhead, the minutes from that meeting note Jolliffe's request and further state that "[i]f Tony continued to own a lot in Lakeland he would have automatic access to the [parcel]." Furthermore, in a May 4, 1999, letter to Jolliffe demanding that he stop using Summit Drive to access the parcel, Lake Arrowhead's board of directors advised Jolliffe that he was "the owner of Lot 4 in Block 32, which can be used for this purpose."

■ In the instant case, Jolliffe seeks to use Lot 4 to access the parcel on which he proposes to build a residence. Jolliffe is not proposing to use or develop Lot 4 for a commercial purpose, but, rather, for ingress and egress to his residence. There is nothing in Jolliffe's proposed use of Lot 4 which violates the terms of the restrictive covenants. Accordingly, we affirm the portion of the district court's order which concluded that access to the parcel from Lot 4 by Jolliffe did not breach the restrictive covenants.

## VI. CONCLUSION

We conclude that Jolliffe failed to offer clear, convincing, and satisfactory evidence of adverse use of Lakeland Estates property for ingress and egress to the parcel, and accordingly, we reverse the portion of the district court's order which granted Jolliffe a prescriptive easement. We further conclude that Jolliffe's use of Lot 4 to access the parcel on which he proposes to build a residence does not violate the restrictive covenants of Lakeland Estates, and accordingly, we affirm that portion of the district court's order which concluded that Jolliffe could access the parcel from Lot 4 without violating the covenant.

AFFIRMED IN PART, AND IN PART REVERSED.